In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-4001

NAHAR SAID DABABNEH,

*Petitioner*,

*v.*

ALBERTO GONZALES, Attorney General
of the United States,

*Respondent.*

———————

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A76-773-934

———————

ARGUED NOVEMBER, 11, 2006—DECIDED DECEMBER 19, 2006

———————


Before BAUER, POSNER, and FLAUM, *Circuit Judges.*

FLAUM, *Circuit Judge.* Nahar Said Dababneh has lived illegally in the Chicago area since December 1, 1993. On April 14, 2003, the Department of Homeland Security ("DHS") served Dababneh with a Notice to Appear ("NTA"), which did not include the time or date of his removal hearing. DHS served Dababneh the NTA approximately a month and a half before he accumulated ten years of continuous presence in the United States, which would have made him eligible for cancellation of deportation. After DHS filed the NTA, the Immigration Court sent Dababneh a notice specifying the time and date of his hearing. Dababneh filed a motion to terminate

proceedings alleging that the NTA was defective. The Immigration Judge ("IJ") denied the motion. Dababneh conceded deportability, and the IJ granted him a voluntary departure. Dababneh appealed the decision to the Immigration Board, which affirmed the IJ's decision without opinion. Dababneh now petitions this Court for review. For the following reasons, we deny Dababneh's petition.

## I. BACKGROUND

Dababneh is a native and citizen of Jordan, who was admitted to the United States on June 1, 1993 as a non-immigrant visitor. Although he was only authorized to remain in the country until December 1, 1993, he has lived in the Chicago area since his entry. Dababneh is married with two children who are U.S. citizens. In April 2003, DHS discovered Dababneh's presence in the country. On April 14, 2003, a DHS agent personally served Dababneh with an NTA. The NTA informed Dababneh that he was removable under Immigration and Nationality Act ("INA") § 237(a)(1)(B), and ordered him "to appear before an Immigration Judge of the United States Department of Justice at: 55 East Monroe Street Suite 900 Chicago, Illinois US 60603 on a date to be set at a time to be set to show why you should not be removed from the United States based on the charge(s) set forth above."

On May 1, 2003, DHS filed the NTA with the Immigration Court. On May 2, the Immigration Court sent Dababneh a Notice of Hearing in Removal Proceedings indicating that his case had been scheduled for a hearing on May 23, 2003 at 9 AM. On May 23, because Dababneh appeared before the IJ without counsel, the IJ rescheduled the hearing for April 2, 2004.

The case was subsequently transferred to a second IJ, who moved up the hearing date to January 13, 2004. On

that date, Dababneh appeared before the IJ with counsel, arguing that DHS's failure to include the date and time of the initial hearing in the NTA rendered it defective. The IJ requested briefing on the issue. On April 30, Dababneh filed a motion to terminate proceedings repeating his contention that the NTA did not specify the date and time of his hearing. On May 5, DHS filed a response, arguing that even if the NTA had a technical error by not specifying the date and time of the hearing, Dababneh suffered no prejudice. On May 6, the IJ denied Dababneh's motion to terminate on the grounds provided in the government's response. On May 17, Dababneh filed a motion to reconsider, which the IJ denied on May 19.

On August 24, 2004, Dababneh appeared before the IJ and conceded removability, designating Jordan as his country of removal. Dababneh informed the IJ that he was just short of having ten years of continuous physical presence in the United States to qualify for cancellation of removal. Because he entered the country on June 1, 1993, he was required to be continuously present in the United States until June 1, 2003 to qualify for cancellation. DHS served Dababneh with the NTA on April 14, 2003, a month and a half before the qualifying date. Pursuant to INA § 240(d), any period of continuous residence or continuous physical presence in the United States is cut off when the alien is served with an NTA under INA § 239(a). Dababneh argued that because his April 14, 2003 NTA did not include the date and time of his hearing, his continuous presence should not be cut off on that date. The IJ also found that Dababneh did not have the necessary ten years prior to DHS's service of the NTA, but advised Dababneh that he could appeal from a finding that the NTA was not defective.

On August 24, 2004, the IJ found Dababneh removable and granted him a voluntary departure. Dababneh appealed the decision to the Immigration Board, which

affirmed the IJ's decision without opinion on September 22, 2005.

## II. DISCUSSION

When the BIA affirms an IJ's decision without opinion, the IJ's decision becomes that of the BIA for purposes of judicial review. *Qureshi v. Gonzales*, 442 F.3d 985, 987 (7th Cir. 2006). Since Dababneh's arguments are purely legal, this Court reviews them de novo. *Sayaxing v. INS*, 179 F.3d 515, 519 (7th Cir. 1999).

### A. Immigration Court's Jurisdiction

Dababneh argues that the IJ did not have jurisdiction to initiate his removal proceedings because DHS did not specify the date and time of his initial hearing in the NTA.[1] INA § 239(a) requires an NTA to specify, among other pieces of information, "the nature of the proceedings against the alien, the legal authority under which the proceedings are conducted, and *the time and place at which the proceedings will be held.*" 8 U.S.C. § 1229 (emphasis added). Under the Immigration Court Rules of Procedure, "[j]urisdiction vests, and proceedings before

---

[1] The government asserts that Dababneh waived his argument that the IJ lacked jurisdiction to find him removable. The government cites *Qureshi* for the proposition that when a petitioner expressly concedes his removability as charged in the NTA, he waives any objection to the IJ's finding of removability, including the argument that the IJ lacked jurisdiction to find him removable. This is a mis-reading of *Qureshi* because the petitioner in that case failed to object to the admission of the NTA, conceded his removability, and pleaded to the charge in the NTA, all *before* claiming that the certificate of service was defective. 442 F.3d at 990.

an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). The implementing regulations also state that "[DHS] shall provide in the [NTA], the time, place[,] and date of the initial removal hearing, where practicable. If that information is not contained in the [NTA], the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place and date of hearing." 8 C.F.R. § 1003.18. Dababneh argues that the statute and the regulations, read together, vest jurisdiction with the Immigration Court when DHS files a charging document with the court, but only when the charging document is in accordance with INA § 239.

The fact that the government fulfilled its obligations under INA § 239(a) in two documents—rather than one—did not deprive the IJ of jurisdiction to initiate removal proceedings. The Eighth Circuit's decision in *Haider v. Gonzales*, 438 F.3d 902 (8th Cir. 2005), is instructive. In *Haider*, the INS served the petitioner with an NTA that ordered the petitioner to appear before an IJ in Bloomington, Minnesota, "on a date to be set at a time to be set to show why the petitioner should not be removed from the United States." *Id.* at 904. The INS filed the NTA with the Immigration Court a month later, at which time the Immigration Court scheduled the hearing's date and time. The Immigration Court then mailed the petitioner a Notice of Hearing in Removal Proceedings (NOH). The court held that its "reading of the INA and the regulations compel[led] the conclusion that the NTA and the NOH, which were properly served on [the petitioner], combined to provide the requisite notice." *Id.* at 907. The court said that "the INA simply requires than an alien be provided written notice of his hearing; it does not require that the NTA served on [the petitioner] satisfy all of § 1229(a)(1)'s notice requirements." *Id.*

We agree with the Eighth Circuit's interpretation of INA § 239. DHS frequently serves NTAs where there is no immediate access to docketing information. In those circumstances, DHS may indicate in the NTA that it will give the alien subsequent notice of the precise time and place of the hearing once it files the NTA with the appropriate immigration court. *See* 8 C.F.R. § 1003.18. That is the case here. This is not a scenario in which the government failed to include any information regarding time and date, or worse, purposefully omitted that information. Rather, DHS informed Dababneh that more information would be forthcoming. The government filed the NTA with the Immigration Court on May 1, 2003, and, as required by the regulations, the Immigration Court sent Dababneh specific information regarding the date and time of his hearing the very next day. Together, the NTA and the subsequent hearing notice met all of the requirements of § 239(a)(1). Dababneh clearly received the second notice because he appeared at the scheduled hearing.

Dababneh argues that the government was required to demonstrate why it was not practicable to include the time and date of the hearing. *See* 8 CFR § 1003.18 (the NTA shall provide time, date, place information, where practicable). Assuming the government's failure violated the regulation, Dababneh must demonstrate that he suffered actual prejudice as a result of the violation. *Martinez-Camargo v. INS*, 282 F.3d 487, 492 (7th Cir. 2002). Dababneh claims that he was prejudiced because "one may assume that had the government taken the extra time to properly prepare and file the NTA, petitioner may well have had the required physical presence." This argument fails because any prejudice on that basis is wholly speculative. Indeed, there is no reason to believe that it would have taken DHS a month and a half to file and serve a proper NTA. Moreover, Dababneh's prepara-

tion for his removal hearing was not prejudiced either. The IJ continued the proceedings for 11 months until Dababneh had counsel. Thus, Dababneh had plenty of time to find an attorney and prepare a defense.

Consequently, the fact that the government fulfilled its requirements under INA § 239(a) in two documents did not strip the IJ of jurisdiction. Under 8 C.F.R. § 1003.14(a), the IJ had jurisdiction once DHS filed the NTA with the Immigration Court on May 1, 2003.

## B. Continuous Presence

Dababneh also argues that a defective NTA should not cut off accrual of physical presence under INA § 240A(d).[2] Section 240A(d) provides that, "[f]or purposes of this section, any period of continuous physical presence in the United States shall be deemed to end when the alien is served notice to appear under section 1229(a) of this title."

---

[2] The government briefly argues that this Court is without jurisdiction to hear Dababneh's argument under INA § 242(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal order . . . ." 8 U.S.C. § 1252(g). The government characterizes Dababneh's argument as a claim that the proceedings against him should have commenced later. This is not an accurate assessment of Dababneh's claims. Dababneh does not challenge the decision to commence proceedings against him; rather, he contends that his NTA was defective and therefore his continuous physical presence should not have been cut off under § 240(A)(d). The question of whether his NTA was defective is a pure question of law, and this Court has jurisdiction to review Dababneh's petition. *See Rosales-Pineda v. Gonzales*, 452 F.3d 627, 630 (7th Cir. 2006).

8 U.S.C. § 1229(b) (the stop-time rule). "The starting point in statutory interpretation is the language of the statute itself." *United States v. James*, 478 U.S. 597, 604 (1985). The language of INA § 240A(d) is clear: if an alien has received an NTA, the period of continuous presence is deemed to end. Here, Dababneh received an effective NTA that met the § 239 requirements through receipt of both the NTA and the NOH. Accordingly, once DHS served Dababneh with those documents, the stop-time rule cut off his accrual of physical presence.

Dababneh argues that this Court has closely scrutinized legislation that cuts off an alien's ability to apply for beneficial relief, citing *Reyes-Hernandez v. INS*, 89 F.3d 490 (7th Cir. 1996), and *Jideonwo v. INS*, 224 F.3d 692 (7th Cir. 2000). In *Reyes-Hernandez* and *Jideonwo*, this Court dealt with questions regarding the retroactivity of § 440(d) of the Antiterrorism and Effective Death Penalty Act (AEDPA), which extinguished relief for a certain class of aliens under INA § 212(c). In both cases, the petitioners made decisions (one pled guilty to criminal charges opening himself up to deportation, and one conceded deportability) relying on the availability of relief from deportation under INA § 212(c). The Court held that retroactively applying AEDPA § 440(d) would not be fair in those cases. *Jideonwo*, 224 F.3d at 701; *Reyes-Hernandez*, 89 F.3d at 493. There is no analogy between those cases and the case before us now. Dababneh did not make a decision in reliance on available relief only to have that relief extinguished by subsequent legislation. Congress passed INA § 240A(d) in 1996, and thus there is no retroactivity challenge here.

## III. CONCLUSION

For the above stated reasons, we DENY Dababneh's petition for review.

No. 05-4001                                                    9

A true Copy:

    Teste:

 

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*