In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 14-1176

YI DI WANG,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

_____

Petition for Review of an Order of the
Board of Immigration Appeals.
A 076-505-705

_____

ARGUED JULY 8, 2014 — DECIDED JULY 16, 2014

_____

Before WOOD, *Chief Judge*, and BAUER and HAMILTON,
*Circuit Judges*.

WOOD, *Chief Judge*. In order to be eligible for cancellation
of removal, a nonpermanent resident alien must have ac-
crued 10 years of continuous physical presence in the United
States. That presence, however, is deemed to end "when the
alien is served a Notice to Appear under section 1229(a)" of
the Immigration and Nationality Act (INA). See 8 U.S.C.

§ 1229b(b)(1)(A), (d)(1). In this petition for review, we must decide whether a notice that does not specify a particular time and date for the alien's initial hearing nonetheless suffices for purposes of this "stop-time" rule. The Board of Immigration Appeals has already answered that question in the affirmative, in its precedential decision in *Matter of Camarillo*, 25 I & N Dec. 644 (BIA 2011). We conclude that its interpretation is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and so we deny the petition for review filed by Yi Di Wang.

## I

Wang, a native and citizen of China (Fujian Province), was smuggled into the United States Virgin Islands on September 27, 1999; he was 21 years old at the time. Within two days of his arrival, immigration authorities discovered him and took him into custody. He was personally served on that date with a Notice to Appear that ordered him to appear in the immigration court in New Orleans at a "[t]ime and date to be set later." (There is no immigration court in the U.S. Virgin Islands. See EOIR Immigration Court Listing, http://www.justice.gov/eoir/sibpages/ICadr.htm (last visited July 16, 2014).) The authorities then transported Wang to a detention facility in New Orleans. Wang was released on $15,000 bond, at which time he provided an address in North Carolina as his residence.

In the course of the 1999 proceedings, the immigration court twice attempted to inform Wang of the date and time of his hearing. While he was in custody in New Orleans, the immigration court sent him via FedEx a "notice of hearing" setting a date and time for a video hearing. After his release on bond, the court sent a second notice of hearing—this time

to the North Carolina address he had furnished—setting a different date and time. Although Wang received the first notice of hearing, it appears that neither notice was properly served. Wang did not show up for his hearing, and in November 1999, the immigration judge administratively closed the case at the government's request.

Over the next 10 years, Wang remained in the United States and avoided the attention of the immigration authorities. In 2009 he married a Chinese citizen and eventually had two children with her. In October of that year he voluntarily returned to immigration court and moved to recalendar his proceedings. At a hearing in March 2010, Wang admitted the charges in the Notice to Appear and conceded removability, but stated that he was pursuing a U Visa and planned to seek asylum and relief under the Convention Against Torture. (A U Visa is available to noncitizen victims of certain crimes who "have been or are likely to be helpful to authorities in investigating or prosecuting that crime." *L.D.G. v. Holder*, 744 F.3d 1022, 1024 (7th Cir. 2014); see 8 U.S.C. §§ 1101(a)(15)(U), 1184(p).) Wang believed that he was eligible for the visa as a victim of human trafficking. See 8 U.S.C. § 1101(a)(15)(U)(iii). Before it could be resolved, his case was transferred to the immigration court in Chicago; that court held a hearing in March 2011. Immigration Judge Carlos Cuevas ordered the case continued for 20 months until November 2012 to allow Wang to continue pursuing a U Visa and to decide what other relief he would be requesting. The IJ explained that if the U Visa were denied in the meantime, Wang should "come in with some other form of relief" and that the lengthy continuance would give Wang time to get "everything in order."

At the next hearing in November 2012, the IJ wrapped up Wang's case. Wang's attorney explained that Wang's attempt to obtain a U Visa had failed, and so he was submitting an application for cancellation of removal. The IJ denied that application on the ground that Wang lacked the required 10 years of continuous presence in the United States. Although he had been physically present, his qualifying time ended, the IJ ruled, when he was served with a Notice to Appear just two days after his arrival. See 8 U.S.C. § 1229b(b)(1)(A), (d)(1). Wang asked for a continuance to file an application for asylum, but the IJ rejected the request as a "delay tactic," especially in light of the lengthy continuance that he already had granted. Wang then testified to his version of events. He described how he was smuggled into the country and, after being released on bond, was locked up and beaten by his smugglers for two and a half months. He asserted that the smugglers threatened to harm his family in China if he went to the police. Wang's counsel then renewed his motion for a continuance to file an asylum application. The IJ denied the motion and ordered Wang removed.

Wang appealed to the Board of Immigration Appeals. His brief before the Board focused heavily on our decision in *Dababneh v. Gonzales*, 471 F.3d 806 (7th Cir. 2006), a similar case involving the so-called "stop-time" rule, 8 U.S.C. § 1229b(d)(1), and a Notice to Appear that did not include the time and date of a hearing. But the petitioner in *Dababneh*, unlike Wang, was properly served within 10 years of his arrival in the United States with a second document—a "notice of hearing" specifying the date and time of his hearing. See 471 F.3d at 807, 810. We denied the petition for review, ruling that the statutory requirements of § 1229b(d)(1) can be met by reading the Notice to Appear

together with a later-served notice of hearing. *Id.* at 810. Wang urged the Board to find that a Notice to Appear that does not include the date and time of a hearing cannot by itself trigger § 1229b(d)(1). In a footnote, Wang's brief acknowledged and disagreed with the Board's decision in *Matter of Camarillo*, 25 I & N Dec. 644, *supra*, in which the Board held that an alien's continuous presence in the United States ends upon the service of a Notice to Appear on the alien, even if that notice is missing the date and time of the initial hearing. Wang argued that *Camarillo* "misconstrued" both *Dababneh* and the statute itself, and that the IJ abused his discretion by denying a continuance.

The Board, relying on *Camarillo*, dismissed the appeal with this explanation:

> [W]e disagree with [Wang's] argument that we mischaracterized *Dababneh v. Gonzales*, 471 F.3d 806 (7th Cir. 2006), in our precedent decision in *Matter of Camarillo*, 25 I. & N. Dec. 644 (BIA 2011), and we are not inclined to revisit *Camarillo*. In *Dababneh*, the court found that the failure to include the time and date of the hearing in the NTA did not render it ineffective for purposes of cutting off the accrual of continuous physical presence where the hearing notice was subsequently provided. Further, the *Dababneh* court specifically stated that "[t]he language of INA § 240A(d) is clear: if an alien has received an NTA, the period of continuous presence is deemed to end." *Dababneh v. Gonzales, supra*, at 810.

The Board also rejected Wang's argument about the denial of a continuance because he had not shown "good

cause" for a continuance, see 8 C.F.R. § 1003.29, nor demon-strated prejudice.

## II

Wang's principal argument is that the Board wrongly concluded that he is ineligible for cancellation of removal, because it relied on a defective Notice to Appear to cut off his continuous presence in the United States. (Because the Board agreed with the IJ's decision and added its own ob-servations, we review both the IJ's and the Board's decisions. *Pouhova v. Holder*, 726 F.3d 1007, 1011 (7th Cir. 2013).) Two statutes govern here: 8 U.S.C. § 1229b(d)(1), which provides that an alien's "continuous physical presence in the United States shall be deemed to end … when the alien is served a notice to appear under section 1229(a) of this title"; and 8 U.S.C. § 1229(a)(1), which lists the information that must be included in a Notice to Appear. One required item is the "time and place at which the proceedings will be held." *Id.* § 1229(a)(1)(G)(i). Wang argues that he did not receive an effective Notice to Appear because his notice did not comply with § 1229(a)(1)(G)(i) and include the date and time of his hearing. Later notices that cured that defect came too late, in his view, as they were not properly served within 10 years of his arrival in the United States.

Because we are considering a challenge to the Board's au-thoritative interpretation of the immigration laws, "[p]rinciples of *Chevron* deference apply." *Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191, 2203 (2014) (plurality op.); see *Ali v. Mukasey*, 521 F.3d 737, 739 (7th Cir. 2008). Under *Chevron*'s two-part test we first decide, using the "traditional tools of statutory construction," whether Congress "has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc.*

*v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 & n.9 (1984). If it has not, then we proceed to *Chevron*'s second step and ask whether the Board's construction "is based on a permissible construction of the statute." *Id.* at 843.

The Fourth Circuit has already concluded that § 1229b(d)(1) does not directly address, for purposes of step one, the precise question before us: whether an alien's continuous presence in the United States can be halted by a Notice to Appear that lacks the date and time of a hearing. See *Urbina v. Holder*, 745 F.3d 736, 739–40 (4th Cir. 2014). This makes sense to us. The statute conditions operation of the stop-time rule on service of a "notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1). It says nothing about whether a Notice to Appear, in order to function for the stop-time rule, must include the date and time of a hearing. It is logical to conclude that Congress left it to the Board to fill this gap. See *Chevron*, 467 U.S. at 843–44. Perhaps, as Wang contends, the best way to fill the gap is to require perfect compliance with every detail of § 1229(a) to trigger the stop-time rule. Perhaps, as the Board concluded in *Camarillo*, 25 I & N Dec. at 647, it would be preferable to interpret the passage as merely setting forth the type of document that triggers the stop-time rule. This would not be the only area in which a defective document nonetheless serves a useful purpose. In *Becker v. Montgomery*, 532 U.S. 757 (2001), the Supreme Court held that a notice of appeal must be signed, but that the failure to sign in a timely way was a curable defect that did not require the dismissal of the appeal. Just so here. Analogies aside, the central point for present purposes is that Congress did not resolve the issue in the statute, and so Wang cannot prevail under *Chevron*'s first step.

Nothing in *Dababneh* is to the contrary. There we wrote that the statute "is clear: if an alien has received [a Notice to Appear], the period of continuous presence is deemed to end." *Dababneh*, 471 F.3d at 810. To the extent that we indicated that the statute is unambiguous, our statement supports the Board's position here, when it held that Wang received a Notice to Appear and so his "continuous presence [was] deemed to end." *Id.* There are aspects of Wang's case, however, that simply did not arise in *Dababneh.* In particular, *Dababneh* did not address whether a Notice to Appear lacking a date and time is sufficient *on its own* to trigger the stop-time rule. See *id.*; *Guamanrrigra v. Holder*, 670 F.3d 404, 409–10 (2d Cir. 2012) (same).

We therefore proceed to *Chevron*'s second step and ask whether the Board's interpretation "is based on a permissible construction of the statute." 467 U.S. at 843. Although the Board acknowledged the possibility of a number of plausible interpretations of the key language, it concluded that the "best reading" is to treat the phrase "notice to appear under section 1229(a)" as referring to the type of document that triggers the stop-time rule, not as requiring perfect compliance with § 1229(a)(1). *Camarillo*, 25 I. & N. Dec. at 647. A central purpose of the Notice to Appear, the Board explained, is to inform an alien that the government seeks to remove him from the country. Even a notice that does not specify the date or time of a hearing conveys that intent. *Id.* at 650. The Board also placed some weight on the fact that the entity issuing the Notice to Appear—the Department of Homeland Security—is not responsible for scheduling immigration hearings. The immigration court has that duty, and the Board saw "no reason to conclude that Congress would have expected that scheduling delays in the Immigra-

tion Court … would affect when an alien's … physical presence ends." *Id.* Finally, the Board reasonably saw its interpretation as consistent with the stop-time rule's basic purpose: to prevent aliens from delaying their immigration proceedings to become eligible for relief from removal. *Id.* at 649–50; see S. Rep. No. 104–249, at 15 (1996); H. R. Rep. No. 104–469(I), at 122 (1996); *Guamanrrigra*, 670 F.3d at 410. We have no trouble concluding, as our colleagues in the Fourth Circuit did, *Urbina*, 745 F.3d at 740, that the Board's interpretation is "based on a permissible construction of the statute" to which we should defer. See *Chevron*, 467 U.S. at 843.

Lastly, Wang argues that the IJ abused his discretion when he denied another continuance. He asserts that more time, beyond the 20 months the IJ already had given him, would have allowed him to file for asylum. We see no merit in this argument. An IJ has discretion to grant a continuance for "good cause shown," see 8 C.F.R. § 1003.29, and if the judge articulates a legitimate reason for denying a continuance, we will uphold his decision. See *Calma v. Holder*, 663 F.3d 868, 878 (7th Cir. 2011). The IJ denied Wang's request for a continuance, believing it to be a "delay tactic." That was not an abuse of discretion. Wang has not explained why he was unable to prepare an asylum application at any of several earlier times: during the 10 years he was off the authorities' radar, during the year between his March 2010 hearing in New Orleans and his March 2011 hearing in Chicago, or during the 20-month continuance allowed by the IJ before the final hearing in November 2012. In any event, any error in the denial of a continuance would be harmless, see *Calma*, 663 F.3d at 878, because Wang has never explained how he could demonstrate a reasonable fear of persecution

in China: he claims to have been harmed by smugglers *in this country*. See 8 U.S.C. § 1101(a)(42)(A).

The petition for review is DENIED.