In the

# United States Court of Appeals

### For the Seventh Circuit

No. 18-3251

MARIO ORTIZ-SANTIAGO,

*Petitioner*,

*v.*

WILLIAM P. BARR, Attorney General of the United States,

*Respondent*.

Petition for Review of a Decision of the
Board of Immigration Appeals
No. A206-788-936

ARGUED APRIL 8, 2019 — DECIDED MAY 20, 2019

Before WOOD, *Chief Judge*, and SCUDDER and ST. EVE, *Circuit Judges*.

WOOD, *Chief Judge*. Jurisdiction, the Supreme Court has reminded us, "is a word of many, too many meanings." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (quoting *United States v. Vanness*, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996)). Petitioner Mario Ortiz-Santiago, who is seeking to avoid removal from this country, now asks us to wade into those murky waters. He contends that because the Notice to Appear

("Notice") sent to him by the Department of Homeland Security ("DHS") did not have the statutorily required time-and-date information for his removal hearing, subject-matter jurisdiction never vested in the Immigration Court. This flaw, he reasons, rendered the Notice so defective that it did not suffice to trigger the Immigration Court's jurisdiction over his case. Because he never was properly placed in removal proceedings, he concludes, the order of removal that the Immigration Judge entered and the Board of Immigration Appeals affirmed must be vacated.

Ortiz-Santiago is correct that the Notice was procedurally defective, but he overstates the problem. The requirement that a Notice include, within its four corners, the time, date, and place of the removal proceeding is not "jurisdictional" in nature. It is instead the agency's version of a claim-processing rule, violations of which can be forfeited if an objection is not raised in a timely manner. We thus hold, as have the Second, Sixth, and Ninth Circuits, that an Immigration Court's jurisdiction is secure despite the omission in a Notice of time-and-place information. See *Banegas Gomez v. Barr*, — F.3d —, No. 15-3269, 2019 WL 1768914, at *6–8 (2d Cir. April 23, 2019); *Santos-Santos v. Barr*, 917 F.3d 486 (6th Cir. 2019); *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019); *Hernandez-Perez v. Whitaker*, 911 F.3d 305 (6th Cir. 2018). Although we take a different path from those circuits to reach this conclusion, we agree that nothing in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), requires a different result. See also *Villa Serrano v. Barr*, — F.3d —, No. 18-2886, 2019 WL 2052354, at *4 (7th Cir. May 9, 2019) (noting but not deciding this issue). We therefore deny Ortiz-Santiago's petition for review.

**I**

Ortiz-Santiago is a Mexican citizen who has continuously resided in the United States without legal status since 1999. He is now about 50 years old. In October 2015, he was arrested for driving without a license. Shortly thereafter Immigration and Customs Enforcement served him with a document entitled "Notice to Appear" for removal proceedings. See 8 U.S.C. § 1229(a). This Notice asserted that he is a removable noncitizen because he entered the United States without being admitted or paroled. The Notice did not, however, include either a time or date for Ortiz-Santiago's hearing before the Immigration Judge. This omission violated the Immigration and Nationality Act. See 8 U.S.C. § 1229(a)(1)(G)(i) (requiring a Notice to include "[t]he time and place at which the proceedings will be held"). *Cf.* 8 C.F.R. § 1003.15(b), (c) (specifying the contents of a Notice with no mention of time and date). The Notice Ortiz-Santiago received said only that he should appear at the Office of the Immigration Judge in Chicago at a date and time "to be set." Shortly thereafter, the Immigration Court sent Ortiz-Santiago a "Notice of Hearing," setting his hearing for November 12, 2015 at 10:30 a.m. More than a decade ago, we expressly approved this two-step procedure. See *Dababneh v. Gonzales*, 471 F.3d 806, 809–10 (7th Cir. 2006).

During proceedings before the Immigration Judge on August 24, 2016, Ortiz-Santiago conceded that he was subject to removal. He nevertheless sought cancellation of removal based on his having spent more than ten continuous years in the United States, his good moral character, and the purported hardship that his removal would cause to his stepfather, who is a legal permanent resident. See 8 U.S.C. § 1229b(b). After a hearing, the Immigration Judge denied

cancellation, finding that Ortiz-Santiago had failed to show the requisite hardship to his stepfather or his own good moral character.

Ortiz-Santiago appealed that decision to the Board of Immigration Appeals ("the Board"). While his appeal was pending, the Supreme Court decided *Pereira*, which held that a Notice that lacked the statutorily-required time-and-date information did not trigger the stop-time rule. 138 S. Ct. at 2118. (That rule dictates the end-point of the non-citizen's qualifying residence in the United States for certain immigration benefits.) The Court stated, without qualification, that "[a] document that fails to include such information is not a 'notice to appear under section 1229(a)' and thus does not trigger the stop-time rule." *Id.* Approximately two months after that decision, but before the Board issued its decision in this case, Ortiz-Santiago filed a motion to remand with the Board. He took the Court at its word: no time-and-date information, he believed, was the same as no Notice at all. See 8 C.F.R. § 1003.14 (stating that "jurisdiction vests … when a charging document [including a Notice to Appear] is filed with the Immigration Court"). In his view, all he received was a useless piece of paper that did not suffice to initiate anything. The Board denied Ortiz-Santiago's motion to remand and, on *de novo* review, it affirmed the Immigration Judge's finding that he failed to show that his stepfather would suffer sufficient hardship to warrant cancellation. This timely petition for review, in which Ortiz-Santiago emphasizes his "jurisdictional" argument, followed.

**II**

A

As with all questions of statutory interpretation, we start with the statute's text. In relevant part, 8 U.S.C. § 1229(a)(1)(G)(i) states that:

> In removal proceedings under section 1229a of this title, written notice (in this section referred to as a "notice to appear") shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any) specifying the following: … The time and place at which the proceedings will be held.

Neither that provision, nor any other within the Immigration and Nationality Act, says anything about when the Immigration Court is formally authorized to proceed with the case. The agency thus issued implementing regulations, which do the following: 8 C.F.R. § 1003.14 states that "jurisdiction vests" when a charging document is filed with the Immigration Court; 8 C.F.R. § 1003.13 defines a charging document as one of several forms, among which is a Notice; and 8 C.F.R. § 1239.1 specifies that a Notice is the only way to begin a removal proceeding.

But saying that "jurisdiction" vests with the Immigration Court upon the filing of a Notice to Appear is unhelpful without defining what that Notice must include in order to have that effect. Both the statute and the regulations attempt to address this question. As described above, 8 U.S.C. § 1229(a) describes a Notice as "written notice … given … to the alien … specifying" various things including the government's

allegations, the noncitizen's rights and responsibilities, and the "time and place at which the proceedings will be held." The relevant regulations, 8 C.F.R. §§ 1003.15 and 1003.18, provide that a Notice must contain similar information. Importantly, however, neither regulation repeats the requirement that a Notice contain the "time and place" of the removal proceedings. Instead, 8 C.F.R. § 1003.18(b) says only that the "time, place and date" of the initial hearing be provided "where practicable." At least in the last few years, DHS apparently never found it "practicable" to send Notices that contained time and date information. See *Pereira*, 138 S. Ct. at 2111 (noting that "almost 100 percent" of Notices from the previous three years omitted time and date information). Instead, DHS sent Notices with no date or time for the initial hearing and used a place-filler indicating that this information was "to be set." At some point after the Notice was sent—sometimes the same day, sometimes months later—the Immigration Court would send the noncitizen a "Notice of Hearing" detailing when and where she was required to appear.

Until recently, few if any courts were troubled by this inconsistency between the statutory and regulatory text. We certainly were not. To the contrary, we upheld this notification procedure against multiple attacks in the years between 1997 (the year that both the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") and this implementing regulation became effective) and now. In *Dababneh*, we held that "the fact that the government fulfilled its requirements under INA § 239(a) in two documents did not strip the [Immigration Judge] of jurisdiction." 471 F.3d at 810. We also held that the two-document procedure was sufficient to trigger the stop-time rule that governs the end of the

non-citizen's "period of continuous physical presence." *Id.*, citing 8 U.S.C. § 1229b(d)(1) (the stop-time rule). And in *Yi Di Wang v. Holder*, 759 F.3d 670 (7th Cir. 2014), we held that the Board permissibly interpreted section 1229b(d)(1) to allow the stop-time rule to be triggered by a Notice without time-and-place information, without regard to whether a separate Notice of Hearing was later sent. *Id.* at 674–75. We were not an outlier in reaching this conclusion: every circuit court but one to address the issue upheld the Board's interpretation. See *Pereira*, 138 S. Ct. at 2113 n.4 (collecting cases).

Much of that changed with *Pereira*. The question presented to the Court in that case was the same as the one we faced in *Yi Di Wang*: whether DHS's failure to include time-and-date information in a document labeled "Notice to Appear" would still allow that document to trigger the stop-time rule. *Pereira*, 138 S. Ct. at 2110. The Court found the answer to that question "as obvious as it seems: No." *Id.* It determined that "[t]he plain text, the statutory context, and common sense all [led] inescapably and unambiguously to" its conclusion. *Id.*

The relevant statutory provisions, the Court said, were unambiguous and thus not amenable to agency interpretation or an appropriate subject for agency deference. The stop-time rule is explicitly triggered by the service "of a notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1). Section 1229(a) then states that a "notice to appear" is "a 'written notice ... specifying,' as relevant here, '[t]he time and place at which the [removal] proceedings will be held.'" *Pereira*, 138 S. Ct. at 2114 (quoting 8 U.S.C. § 1229(a)(1)(G)(i)). Combined, the "plain text" thus required that in order to trigger the stop-time rule "the Government must serve a notice to appear that, at the

very least, 'specif[ies]' the 'time and place' of the removal pro-
ceedings." *Id.*

The surrounding statutory subsections bolstered the
Court's conclusion. Section 1229(a)(2) enables the govern-
ment to change the time and place of the noncitizen's hearing.
But the ability to change or postpone the hearing presupposes
that the Notice had to specify a time and place in the first in-
stance. *Pereira*, 138 S. Ct. at 2114. A contrary interpretation, the
Court feared, would allow the government to subvert section
1229(b)(1)'s protection of the noncitizen's ability to secure
counsel. That provision dictates that no hearing may occur
within ten days of the Notice's service, so that the noncitizen
has time to secure counsel. But if the government could send
a Notice with no time or date for the hearing without conse-
quence, "the Government could serve a document labeled
'notice to appear' without listing the time and location of the
hearing and then, years down the line, provide that infor-
mation a day before the removal hearing when it becomes
available." *Pereira*, 138 S. Ct. at 2114–15. This would gut sec-
tion 1229(b)(1)'s protections. The Court also appealed to com-
mon sense in support of its reading of the statute. If the words
"notice to appear" mean anything, the Court reasoned, they
must mean providing enough "notice" of the information to
allow a noncitizen "to appear" for a hearing, *i.e.* the time and
place of that hearing. *Id.*

We see two key features in *Pereira*'s analysis. First, *Pereira*
focused on one issue at the intersection of two statutory pro-
visions: the stop-time rule and section 1229(a)'s requirements
for a Notice. See *id.* at 2110. As the Court recognized, this is a
narrow question. It is thus not surprising that the opinion dis-
cussed only the relevance of the omission of time-and-place

information for purposes of the duration of residence in the United States. See *id.* at 2113.

Nonetheless, *Pereira* is not a one-way, one-day train ticket. The Court stated more generally that section 1229(a) speaks "in definitional terms" when referring to time-and-place information. *Id.* at 2116. It worried that not including time-and-place information would "deprive [the notice to appear] of its essential character." *Id.* at 2116–17. And it thought that "the statute makes clear that Congress fully intended to attach substantive significance to the requirement that noncitizens be given notice of at least the time and place of their removal proceedings." *Id.* at 2118. Ultimately, it announced that "when the term 'notice to appear' is used elsewhere in the statutory section, *including* as the trigger for the stop-time rule, it carries with it the substantive time-and-place criteria required by § 1229(a)." *Id.* at 2116 (emphasis added). What the Court did not resolve, however, was what should happen if the time and place are missing. It is to that question that we now turn.

B

We start with the uncontroversial proposition that an agency has no power to rewrite the text of a statute. See *Chevron v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). If Congress has defined a term, then an implementing regulation cannot re-define that term in a conflicting way. We thus conclude that the Notice Ortiz-Santiago received was defective. Congress defined a "Notice to Appear" as a document containing a specific list of required information, including "[t]he time and place at which the proceedings will be held," 8 U.S.C. § 1229(a)(1)(G)(i), and his Notice omitted that information. As the Supreme Court found, Congress's language

was "definitional," and time-and-place information was "unquestionably" part of a Notice's "essential character." *Pereira*, 138 S. Ct. at 2116–17.

The government's efforts to salvage the Notice are unpersuasive. It wants us to find that 8 C.F.R. § 1239.1, entitled "Notice to Appear," is not talking about the same "Notice to Appear" that is defined in the statute. See also 8 C.F.R. §§ 1003.15, 1003.18 (also referring to a "Notice to Appear"). That is absurd. The regulation itself refers to 8 U.S.C. § 1229a, which is also the reference point for 8 U.S.C. § 1229(a)(1)(G)(i), where we find the time-and-place requirement. If that were not enough, the government's position also offends one of the most basic rules of statutory interpretation: "identical words used in different parts of the same act are intended to have the same meaning." *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986).

The government also urges that it achieves substantial compliance with the statute when it uses the two-step process, first sending an incomplete Notice, and then filling in the blanks for time and place in a later Notice of Hearing. The Board adopted that position in *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441 (BIA 2018), in part by relying on our holding in *Dababneh*. *Id.* at 445–47. We are not so sure. It appears to us that *Bermudez-Cota* brushed too quickly over the Supreme Court's rationale in *Pereira* and tracked the dissenting opinion rather than that of the majority.

It is also telling that Congress itself appears to have rejected the two-step approach when it passed IIRIRA. Before that time, deportation proceedings began with a document called an "Order to Show Cause." See 8 U.S.C. § 1252b (1995). The Order to Show Cause had to include largely the same

information as the later Notice to Appear, except that it did not need to specify the time and place of the hearing. See *id.* at § 1252b(a)(1). Instead, just as the *Pereira* dissenter and the *Bermudez-Cota* decision would have it, the statute allowed the time and place to be communicated to a non-citizen "in the order to show cause *or otherwise.*" *Id.* (emphasis added). When Congress enacted IIRIRA, it combined the separate provision in section 1252b(1)(2)(A) with the other substantive requirements of the Order to Show Cause, and it came up with the Notice to Appear. The "or otherwise" language disappeared. The Board took no note of this statutory evolution in *Bermudez-Cota*, nor did it explain how its decision complied with the present statutory language. These omissions are troubling enough to cause us to refrain from resolving this case with a simple citation to *Bermudez-Cota*.

## III

### A

If we had found that the two-step procedure that the Board followed was compatible with the statute, we could end our opinion here. Since we do not read the law that way, however, we must move on to Ortiz-Santiago's contention that the failure to comply was an error of jurisdictional significance.

The parties have assumed that the lack of time-and-place information affects the Immigration Court's (and by extension our) subject-matter jurisdiction. That assumption may have been a tactical one by both parties. It allows Ortiz-Santiago to take the position that his complaint about the government's misstep is not untimely, and it allows the government to raise the dire possibility that adopting Ortiz-Santiago's

position would cause thousands, if not millions, of removal proceedings to be void *ab initio*. See, *e.g.*, *Hernandez-Perez*, 911 F.3d at 314 (contemplating this latter possibility). We are not bound by their framing of the issue, however, and so we regard that characterization as a question to be resolved.

As we acknowledged at the outset, not every error is jurisdictional. In recent years the Supreme Court has "pressed a stricter distinction between truly jurisdictional rules, which govern 'a court's adjudicatory authority,' and nonjurisdictional 'claim-processing rules,' which do not." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (citing *Kontrick v. Ryan*, 540 U.S. 443, 454–55 (2004)). (Granted, that line of authority arose in the context of the courts rather than agencies, but we find the principle a useful one here as well.) *Gonzalez* limited jurisdictional rules to those that "clearly state[] that a threshold limitation on a statute's scope shall count as jurisdictional." 565 U.S. at 141 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006)).

Unlike a limitation on a court's subject-matter jurisdiction, a claim-processing rule is one that "seek[s] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). The "quintessential" example of a claim-processing rule is a filing deadline. *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015). Even a claim-processing rule that is "framed in mandatory terms" does "not deprive a court of authority to hear a case." *Id.* "[I]ndeed, that is so however emphatically expressed those terms may be." *Id.* (quoting *Henderson*, 562 U.S. at 435) (alterations and internal quotation marks omitted).

Applying that analysis to the situation before us, we see a statute (8 U.S.C. § 1229(a)(1)(G)(i)) that says nothing about the agency's jurisdiction. It simply sets out the information that must be included in a Notice to Appear. That does not mean that the statute is unimportant or can be ignored. It simply means that an aggrieved party can forfeit any objection she has by failing to raise it at the right time. See *Kontrick*, 540 U.S. at 456–58.

The fact that the Executive Office for Immigration Review of the Department of Justice purported to describe when "jurisdiction" vests in a case before an immigration court is neither here nor there. See 8 C.F.R. § 1003.14(a). While an agency may adopt rules and processes to maintain order, it cannot define the scope of its power to hear cases. What the Executive Office was doing was establishing exactly what it takes properly to commence a case before it. That decision is not one of jurisdictional significance in the same sense that complete diversity or the existence of a federal question is for a district court. Nonetheless, when the agency creates the rules for its adjudicatory proceedings, it must act within the limits that Congress gave it.

A failure to comply with the statute dictating the content of a Notice to Appear is not one of those fundamental flaws that divests a tribunal of adjudicatory authority. Instead, just as with every other claim-processing rule, failure to comply with that rule may be grounds for dismissal of the case. See generally *Carlisle v. United States*, 517 U.S. 416 (1996) (upholding the denial of a motion for judgment of acquittal that was filed one day late upon the government's objection). But such a failure may also be waived or forfeited by the opposing party. See *Eberhart v. United States*, 546 U.S. 12, 19 (2005)

(finding forfeiture because the government did not raise a timeliness objection before the district court).

As our sister circuits and the Board have noted, it is telling that the Supreme Court made no mention of jurisdiction in *Pereira*. See *Karingithi*, 913 F.3d at 1161; *Hernandez-Perez*, 911 F.3d at 314; *Bermudez-Cota*, 27 I. & N. Dec. at 443–44. That makes sense: there is no reason why the Court needed to do so. And had it found a lack of jurisdiction, it would not have remanded for further proceedings.

B

With that framework established, we turn back to Ortiz-Santiago. Ortiz-Santiago did not raise DHS's failure to include the time and date of his removal hearing until his appeal of the Immigration Judge's decision was already pending with the Board. In the usual case, we would have no trouble saying that his delay resulted in the forfeiture of this point. Indeed, Ortiz-Santiago complained about the defect in the Notice only after *Pereira* was decided and he saw the possibility of wiping out his entire immigration proceeding. The question is thus whether *Pereira* was a sufficient intervening cause to excuse an otherwise clear case of forfeiture, and if not, whether Ortiz-Santiago's forfeiture should be forgiven for some other reason.

Generally, a party wishing to object to a violation of a claim-processing rule must make a timely objection. See *Eberhart*, 546 U.S. at 19 ("[W]here the Government failed to raise a defense of untimeliness until after the District Court had reached the merits, it forfeited that defense."); *Grigsby v. Cotton*, 456 F.3d 727, 731 (7th Cir. 2006) (finding forfeiture where

the government failed to object to a habeas petitioner's time-liness or procedural default in the district court).

Here, Ortiz-Santiago's objection hinged on *Pereira*'s inter-pretation of section 1229(a). Before *Pereira*, such an objection would have been regarded in most—though importantly not all—courts as meritless. We had rejected the exact argument Ortiz-Santiago sought to make about section 1229(a)'s time-and-place information requirement and its effect on the Im-migration Court's jurisdiction. See *Dababneh*, 471 F.3d at 808–10. Most of the other courts of appeals were in accord.

*Pereira* thus represented a genuine change in circum-stances. Courts are normally obliged to apply changes in the law that occur while they continue to have power to adjudi-cate the case before them. In matters of equity, that duty may extend even beyond a final judgment. See *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421 (1865). Generally speaking, the obligation to apply changes in the law extends through a party's direct appeal. See *Henderson*, 568 U.S. at 276 (citing *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103 (1801)); *Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004) ("It is well-established that a court gener-ally applies the law in effect at the time of its decision, and that if the law changes while the case is on appeal the appel-late court applies the new rule.").

But that does not mean that a party may always stand si-lent if a potential problem exists. In Ortiz-Santiago's case, there were signs that a meritorious argument could be raised. He could have noted both the clear statutory text and the fact that the Third Circuit disagreed with *Dababneh*'s and *Yi Di Wang*'s treatment of Notices in the stop-time context. See *Orozco-Velasquez v. Attorney General[,] United States*, 817 F.3d

78, 81–83 (3d Cir. 2016*). Orozco-Velasquez*, importantly, was decided several months *before* the Immigration Judge issued a merits decision in Ortiz-Santiago's case.

We see no reason on this record to relieve Ortiz-Santiago of this forfeiture. *Cf. Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 879 (1991). This is not a case in which the Notice of Hearing never reached him, or it came so quickly that he had trouble preparing for the hearing, or any other discernible prejudice occurred. And if we are considering the equities, we must add to the scales the severity of the consequences and the impact on the government of insisting on compliance at this late date. (We presume that the government even now could issue a compliant Notice to Appear and proceed with a new case against Ortiz-Santiago; but that is cold comfort given the resources that already have been invested in this matter.) If Ortiz-Santiago had raised a prompt objection to the Notice, the Immigration Judge could and should have quashed it for noncompliance with the statute. A new, compliant Notice could have issued, and the case could have proceeded. The fact that the agency's regulations require only that the Department of Homeland Security provide time-and-place information "where practicable" does not, as we have said, dilute the statutory requirements. See 8 C.F.R. § 1003.18(b).

The courts of appeals operate under a similar system. In order to file a proper appeal in a federal court of appeals, the district-court loser must lodge a notice of appeal in the district court within a specified time, and then the district clerk must serve a copy of the notice of appeal on all counsel of record and unrepresented parties and send a copy to the clerk of the court of appeals. FED. R. APP. P. 3(a), (d). The rules specify

what a notice of appeal must include: the name of the appeal-ing party or parties; the judgment or order from which the appeal is taken; and the court to which the appeal is directed. *Id.*, Rule 3(c)(1). But—and here is the point that is pertinent to the present case—the rules go on to say that appeals must not be dismissed "for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice." *Id.*, Rule 3(c)(4). Indeed, the Supreme Court has held that even the absence of a signa-ture on a notice of appeal does not automatically require the court of appeals to dismiss the appeal. *Becker v. Montgomery*, 532 U.S. 757, 760 (2001). The lack of a signature, it said, is a curable lapse rather than a jurisdictional flaw.

We see no reason not to apply the same approach here. Relief will be available for those who make timely objections, as well as those whose timing is excusable and who can show prejudice. See, *e.g.*, *Pereira*, 138 S. Ct. at 2112 (explaining that Pereira never received his Notice of Hearing despite provid-ing a change of address to DHS). And we urge the Depart-ment of Homeland Security to be more scrupulous in its stat-utory compliance: it is much easier to do things right the first time than to do them over.

**IV**

Anticipating that we might uphold the Notice to Appear, Ortiz-Santiago also asks us to remand his case to the Board for reconsideration of his character and his showing that his legal-permanent-resident stepfather will experience "excep-tional and extremely unusual" hardship if Ortiz-Santiago is removed. But on this point Congress has imposed a jurisdic-tional bar. See 8 U.S.C. § 1252(a)(2)(B). Ortiz-Santiago's argu-ments for relief are attacks on the merits of the Board's

reasoning; he believes that the Board did not fully appreciate the extent of harm to his stepfather that the loss of his remittances will cause. This attack on the merits raises no "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D), and so we have no jurisdiction to consider it. See *Stepanovic v. Filip*, 554 F.3d 673, 677–78 (7th Cir. 2009) (explaining that 8 U.S.C. § 1252(a)(2)(D) allows only review of "pure" questions of law).

***

In order to proceed in its attempt to remove Ortiz-Santiago from the United States, DHS should have provided him with a statutorily compliant Notice to Appear and filed that notice with the Immigration Court. It failed to do so when it omitted the time and date of Ortiz-Santiago's removal hearing from that Notice. But this was a failure to follow a claim-processing rule, not a jurisdictional flaw. Because Ortiz-Santiago did not timely object to the government's misstep and cannot show that he was prejudiced by the noncompliant form, we DENY his petition for review.