# MATTER OF PENA-DIAZ

## In Deportation Proceedings

### A-30568827

### *Decided by Board August 4, 1994*

(1) When an alien becomes eligible for a new form of relief from deportation due to the Immigration and Naturalization Service's intentional lack of enforcement of a final order of deportation, it is appropriate to consider this factor in deciding whether or not the proceedings should be reopened in the exercise of discretion and whether the alien has established statutory eligibility for the relief sought upon reopening.

(2) In granting the respondent's motion to reopen deportation proceedings, consideration and weight were accorded to the Service's affirmative permission for the respondent to remain in the United States, its failure to show any intent to effect his deportation if the motion were denied, and its inconsistent actions in granting the respondent's request for deferred action status and subsequently opposing his motion to reopen proceedings.

CHARGE:

Order: Act of 1952—Sec. 241(a)(11) [8 U.S.C. § 1251(a)(11)]—Convicted of controlled substance violation

ON BEHALF OF RESPONDENT:
Thelma O. Garcia, Esquire
301 East Madison Street
Harlingen, Texas 78550

ON BEHALF OF SERVICE:
Grace A. Sease
General Attorney

BY: Dunne, Acting Chairman; Vacca, Board Member. Concurring and Dissenting Opinion: Heilman, Board Member. Concurring Opinion: Holmes, Alternate Board Member.

In a decision dated September 2, 1992, an immigration judge denied the respondent's motion to reopen in order to apply for suspension of deportation under section 244(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(2) (Supp. IV 1992). The respondent timely appealed from that decision and requested oral argument. The appeal will be sustained, the proceedings will be reopened, and the record will be remanded. The request for oral argument is denied.

The respondent is a 45-year-old native and citizen of Mexico who entered the United States as a lawful permanent resident on May 5,

1972. On March 26, 1976, the respondent was convicted of possession of approximately 95 pounds of marijuana with intent to distribute and sentenced to a term of 3 years' incarceration and a special parole term of 2 years, with all but 3 months of the sentence suspended. The court further recommended that the respondent not be deported as a result of his conviction.

On June 25, 1976, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing (Form I-221) charging the respondent with deportability under section 241(a)(11) of the Act, 8 U.S.C. § 1251(a)(11) (1976), as an alien who had been convicted of a controlled substance violation. In a hearing conducted on January 4, 1977, the respondent admitted the charges and, being ineligible for relief from deportation, was ordered deported from the United States to Mexico.

On January 5, 1977, the respondent requested a stay of deportation on the basis of the presence of his family members in the Brownsville, Texas, area, including his wife and two United States citizen children; his steady employment in that area as a machinist; and his presence in the United States as a lawful permanent resident since 1972. The Service apparently granted the respondent's request for a stay on April 7, 1977, effective until January 5, 1978. On July 7, 1978, the respondent applied for another stay of deportation, although it is not clear from the record whether this request was granted or denied. The respondent again applied for a stay of deportation on January 8, 1979, and this request was granted until January 8, 1980. On January 17 of that year, the respondent was placed in deferred action status. A condition of such status was that the respondent report in person to the district director each year. The record reflects that the respondent largely complied with this condition at least through 1989.

Apparently in an effort to travel to Matamoros, Mexico, to visit his parents, the respondent applied for a new Alien Registration Receipt Card (Form I-151) in January 1983. This request was denied on the ground that the respondent was no longer a lawful permanent resident. On March 13, 1984, the respondent filed a motion to reopen his deportation proceedings for the purpose of applying for relief under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1982). An immigration judge replied to the respondent's motion on March 19, 1984, indicating his belief that the respondent was ineligible to apply for a waiver of inadmissibility under that provision, but reserving judgment on the issue until the Service could file a brief in opposition to the motion. For reasons not apparent from the record, no decision was taken on the motion until after the respondent had inquired about its status in February 1986, when another immigration judge denied it for lack of statutory eligibility on March 13, 1986.

According to the Service's brief in opposition to the instant appeal, the respondent's deferred action status was lifted on March 23, 1984, as a result of his motion to reopen filed earlier that month. As noted above, however, the respondent continued to report yearly as required by the district director, and no affirmative action was taken to effect his deportation until late 1987 or early 1988, when, according to the Service's brief, the respondent was ordered to report for deportation on February 25, 1988. The respondent apparently applied for reinstatement of deferred action status on February 16, 1988, a request which was denied on February 25, 1988.

On March 22, 1988, the respondent moved to reopen his deportation proceedings, this time for the purpose of applying for suspension of deportation under section 244(a)(2) of the Act. In support of his motion to reopen, the respondent submitted documentation to establish his continuous physical presence in the United States and his good moral character for the 10 years preceding the application, as well as to support his claim that his deportation would cause "exceptional and extremely unusual hardship" to himself, his lawful permanent resident alien spouse, and his three United States citizen children.

On June 14, 1988, the immigration judge denied the respondent's motion to reopen on the ground that the respondent's "equities," i.e., the basis for his claim of exceptional and extremely unusual hardship, had accrued in the 11 years since the court's deportation order. Believing that the respondent had ignored the order of deportation, the immigration judge refused to allow the respondent to benefit from his indifference or disregard of the law. Finally, noting the interest in bringing litigation to an end, the immigration judge concluded that the respondent's order of deportation should have been carried out long ago and denied the motion to reopen, presumably in the exercise of discretion.

On June 9, 1992, the respondent again moved to reopen to apply for suspension of deportation under section 244(a)(2) of the Act. In this motion, the respondent pointed out that he had not "ignored the court's order of deportation," but rather had remained in the United States with the permission of the Service. The respondent claimed in this regard that his prior counsel had not submitted the evidence of his deferred action status and requested that the immigration judge adjudicate the motion in this light.

On June 30, 1992, the immigration judge denied the respondent's third motion to reopen for the reasons set forth in his preceding denial. Finding that the evidence that the respondent sought to offer of his deferred action status was not previously unavailable, the immigration judge found the respondent's motion to be frivolous and filed solely

for the purpose of delaying the 1977 deportation order. The immigration judge accordingly denied the motion, set aside all stays of deportation, and ordered that the 1977 order of deportation be considered in full force and effect.

In a fourth and final motion filed on September 1, 1992, the respondent again requested reopening of the proceedings in order to apply for suspension of deportation. This motion is essentially identical to his third motion to reopen. In like manner, the immigration judge's denial of the ultimate motion is also based on the same reasoning as his earlier denial, but emphasizes his finding that the motion was frivolous and filed solely for the purpose of delay. The respondent timely appealed from that decision.

On appeal, the respondent argues that the immigration judge erred in not considering the evidence that he submitted regarding his permission to remain in the United States. In addition, the respondent points to the following factors in alleging hardship to himself and his family if he is deported: his long-term residence and property ownership in the United States; the fact that his conviction occurred 18 years ago and that he has been law-abiding during those years; the fact that he has remained in this country with permission from the Service; and, finally, the presence of all of his immediate family in this country, including a United States citizen child with a heart condition.

The Service, in opposition to the respondent's appeal, characterizes the same as "frivolous" and argues that public policy favors that this ongoing litigation be brought to a close.

It is true that several grounds exist for denying a motion to reopen, and that an alien requesting such action bears a "heavy burden." *See INS v. Doherty*, 502 U.S. 314, (1992); *INS v. Abudu*, 485 U.S. 94 (1988); *Matter of Coelho*, 20 I&N Dec. 464 (BIA 1992). In this case, however, we believe the respondent has presented sufficient evidence to establish that he warrants a hearing on his application for suspension of deportation.

In reaching this conclusion, we first note that it is unclear whether the immigration judge ever took into consideration the fact that the respondent remained in this country with permission from the Service. As the immigration judge's perception that the respondent ignored a valid deportation order provides the basis for the first denial of the respondent's request for reopening, and because the subsequent denials adopt the reasoning of the first, we believe this significant factor may have been overlooked.

Second, it is clear from the record that the respondent has established the necessary physical presence in the United States and his good moral character for the qualifying period. The remaining questions, therefore, are whether the respondent has established a

prima facie showing of the requisite "exceptional and extremely unusual hardship" under section 244(a)(2) of the Act and whether reopening is warranted in the exercise of discretion.

After careful review of the record, we shall answer both these questions in the affirmative. The respondent has spent almost half of his life in this country, has been steadily employed, and owns real property. In addition, the members of respondent's immediate family are well established here as members of our society, and we are mindful that one of his United States citizen children has a congenital heart defect for which she is undergoing treatment. We would also note that the evidence of record in support of the instant motion is voluminous and includes affidavits from the respondent's employer as well as friends, neighbors, and local law enforcement officials. Finally, although the respondent's drug-related conviction is his sole transgression, it nevertheless renders him ineligible for any other form of relief from deportation and further precludes him from again legally immigrating to the United States, no matter how distant in time it may become. We would note in passing that, at least one time in the past, the Service itself viewed the respondent's equities as sufficient to warrant an administrative grant of deferred action status. Moreover, these equities have dramatically increased on account of the Service's actions.

In this regard, the respondent understandably claims that he will suffer further hardship due to his long-term deferred action status which, ironically, was accorded to him by the same agency now seeking his immediate deportation. We would not unhesitatingly agree with the respondent that this fact constitutes "hardship" in the respondent's case as that term has previously been interpreted by this Board and the federal courts. However, we do believe that the impact of the Service's actions in the past warrants some examination in the instant case.

As noted above, the reasons for the Service's grant of deferred action status to the respondent in 1980 presumably arose from the humanitarian concerns in his case. This being so, we are somewhat at a loss to understand why the respondent should now face such determined opposition to his motion to reopen, since the Service is itself accountable for the respondent's accumulation of even further equities in the United States.

While the respondent's case presents compelling circumstances, our receipt of motions to reopen by other aliens who have become eligible for additional forms of relief after the entry of a final order of deportation is increasing. In this respect, we first note the general rule that aliens should not be rewarded for time spent pursuing frivolous appeals and that motions to reopen made in this context are properly

denied as a matter of discretion. *See, e.g., INS v. Rios-Pineda*, 471 U.S. 444 (1985); *Matter of Barocio*, 19 I&N Dec. 255 (BIA 1985); *Matter of Lam*, 14 I&N Dec. 98 (BIA 1972). The cases we are referring to, however, involve aliens who have remained in the United States after the issuance of a final order of deportation, with no apparent effort on the part of the Service to remove them from this country. It therefore seems reasonable that, when an alien's eligibility for a new form of relief from deportation arises due to the Service's deliberate failure to enforce a final deportation order, it is equally appropriate to consider this factor in deciding whether or not the proceedings should be reopened in the exercise of discretion. In a case such as the respondent's, where the Service has affirmatively permitted the alien to remain, the equities in the alien's favor become particularly strong.

Our inquiry, however, does not end here. Before a motion or any form of discretionary relief may be granted, an alien must first establish statutory eligibility therefor; only then does the issue of the proper exercise of discretion present itself. *INS v. Abudu, supra.* In this respect, we further find that the Service's decision not to enforce an outstanding order of deportation could have an effect on the hardship determination in some cases, in addition to being a positive factor in the exercise of discretion. If the denial of a motion will likely result in an alien simply being left in limbo with no further action taken to remove him or her from the United States, that state of continuing uncertainty in life may be a matter appropriate to be considered in evaluating whether the denial of the motion will result in hardship.

In sum, in the context of a motion to reopen for suspension of deportation, we may consider the actions of the Service with respect to its enforcement or intentional lack of enforcement of a final order of deportation in deciding whether an alien has established a prima facie case of "extreme hardship" as required under that provision. *See Matter of Coelho, supra.* If such hardship is found to exist, we shall also consider the Service's actions in deciding whether such a motion should be granted in the exercise of discretion. In cases such as the respondent's, in which the Service has affirmatively permitted the alien to remain, the equities may well favor a subsequent request to reopen proceedings. On the other hand, aliens who intentionally flout lawful orders of deportation or who obtain their eligibility for additional forms of relief due to dilatory tactics will likely not be found to merit the favorable exercise of discretion required for reopening of deportation proceedings. *INS v. Rios-Pineda, supra; Matter of Barocio, supra.*

Turning to the facts of the instant case, we conclude that the respondent has made a sufficient prima facie showing of exceptional and extremely unusual hardship and has established that the reopening

of his deportation proceedings is warranted as a matter of discretion. *See Matter of Anderson*, 16 I&N Dec. 596 (BIA 1978). In this respect, we find that the Service's affirmative permission for the respondent to remain and its failure to show any intent to effect his deportation if the instant motion is denied contribute to the respondent's other allegations of hardship. In addition, we conclude that the Service's inconsistent actions in granting the respondent's request for deferred action status and subsequently opposing his motion to reopen are properly considered as favorable factors in the exercise of our discretion. Weighing all of the factors presented, we conclude that the motion to reopen should be granted.

We caution that this decision is not a determination that the respondent merits suspension of deportation as a matter of law or of discretion; that decision will rest with the immigration judge after the respondent has had an opportunity to present all of the evidence and arguments in favor of his application for relief from deportation that he may wish to make. The following orders shall accordingly be entered.

**ORDER:** The appeal is sustained and the deportation proceedings are reopened.

**FURTHER ORDER:** The record is remanded to the immigration judge for further proceedings.

## CONCURRING IN PART AND DISSENTING IN PART:
Michael J. Heilman, Board Member

I respectfully concur in part and dissent in part.

It appears to me that the majority may be sowing a bit of confusion in its blending of two completely distinct issues: the Immigration and Naturalization Service's apparent affirmative decision to allow an otherwise deportable alien to remain in the United States, and whether the alien has established "exceptional and extremely unusual hardship" for purposes of section 244(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(2) (Supp. IV 1992). In particular, the following passage in the majority opinion seems to hold that the Service's decision to grant "deferred action" status or to grant extended stays of deportation enhances the claim of hardship:

> In sum, in the context of a motion to reopen for suspension of deportation under section 244 of the Act, we may consider the actions of the Service with respect to its enforcement or intentional lack of enforcement of a final order of deportation in deciding whether an alien has established a prima facie case of "extreme hardship" as required under that provision. *See Matter of Coelho, supra*. If such hardship is found to exist, we shall also consider the Service's actions in deciding whether such a motion should be granted in the exercise of discretion.

The first sentence appears to state that the "actions of the Service" are relevant to whether the applicant for suspension has established extreme hardship. The second sentence seems to hold that the Service's actions are relevant to the exercise of discretion in granting the motion to remand. These are separate issues. I prefer not to leave the impression that the Service's decision to allow a deportable alien to remain in the United States somehow increases hardship. This does not appear to me to be logical. It is certainly true that extending one's physical presence in the United States could lead to circumstances that would make it harder to eventually leave. I fail to see, though, how the Service's ill-advised or well-advised decision to let someone remain affects the quality or quantity of hardship that person might experience upon deportation. This becomes clear if we examine the case of two individuals who have both remained in the United States for 20 years, the first as a beneficiary, in part, of "affirmative" Service actions, the other not. Assuming identical circumstances, how is it that the recipient of Service largesse has had his hardship increased over that of his similarly situated counterpart? Yet, this is the apparent conclusion of the majority, when it states:

> In this respect, we find that the Service's affirmative permission for the respondent to remain and its failure to show any intent to effect his deportation if the instant motion is denied contribute to the respondent's other allegations of hardship.

If the majority believes that the Service's "permission to remain" contributes to his hardship, this can only mean that this permission has increased his hardship. The cause and effect relationship eludes me. The Service has not become an agent of hardship because it has done the respondent a favor. Hardship is either inherent in the respondent's circumstances or it is not, and it hardly matters what reason the Service had in allowing him to remain, whether the product of indifference or sympathy. If the hardship accrued during the extra time the respondent remained in the United States because the Service failed to deport him due to since-regretted kindness, this is entirely fortuitous. The same amount of hardship might have accrued if the respondent had evaded deportation, or had simply been ignored, the latter situation being the altogether more common case. If, for instance, the respondent had had two more children born to him during this time, he might say that he would not have fathered them if the Service had not allowed him to remain. An individual who had ignored an order to depart might also have had two children and also claim this fact as evidence of extra hardship. In either case, it is first necessary to establish that the birth of two extra children will increase the hardship of deportation.

I would agree with the majority that in exercising our discretion as

to whether to reopen we can consider the Service's role in the respondent's continued presence. But this issue only arises after we have considered the statutory issue of hardship. Surely in considering the Service's opposition to this motion, it is fair to consider the manner by which the respondent accrued his extra presence. We have, in other cases, considered as an adverse factor in exercising our discretion, whether, for example, a respondent has been ordered to report for deportation and has absconded or failed to comply with that request. The situation in this case is rather the other side of the coin, where, upon his request, the respondent was told he could remain, and so he can arguably present a somewhat more laudatory explanation for why he did not leave when ordered deported.

While I can agree that reopening is warranted on the basis of the information contained in the motion to reopen, I would not agree that the degree of hardship has been increased by the Service's actions, and I do not join in that portion of the majority opinion.

*CONCURRING OPINION*: David B. Holmes, Alternate Board Member

I respectfully concur.

I concur in the majority opinion, but would add the following comment. In evaluating the level of hardship that may result from the enforced departure of an individual from the United States, it is my view that normal human expectations may well be a factor to be considered. If a person has been in this country for 20 years and has accumulated equities while hiding from the authorities, that person likely understands that his or her continued presence here could easily hang by a very slender thread. If another person has remained here for 20 years accumulating identical equities while his or her presence was openly known and tolerated by the Immigration and Naturalization Service, he or she reasonably could have a whole different degree of expectation regarding the future. To my mind, it is likely that the emotional hardship resulting from an enforced departure from this country would be far greater in the latter case than in the former. While this consideration ultimately may or may not be significant in a given case, I would not foreclose its inclusion as a relevant factor to be considered in evaluating whether or not an alien's enforced departure would result in an "extreme hardship."