In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2521

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDMUNDO MANRIQUEZ-ALVARADO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 18-20045-001 — **James E. Shadid**, *Judge.*

ARGUED MARCH 3, 2020 — DECIDED MARCH 24, 2020

Before EASTERBROOK, KANNE, and ST. EVE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Edmundo Manriquez-Alvarado, a citizen of Mexico, has entered the United States repeatedly by stealth. How often we do not know, but the record shows that he was ordered removed in 2008, 2010, 2012, 2014, and 2017, each time following a criminal conviction. (His record includes convictions for burglary, domestic violence, trafficking illegal drugs, and unauthorized reentry.) The gaps between the removal orders stem from

the time it takes to catch him, plus time he spends in prison following his convictions.

Manriquez-Alvarado was found in the United States yet again in 2018 and indicted for illegal reentry. 8 U.S.C. §1326(a), (b)(2). His drug crime is defined by 8 U.S.C. §1101(a)(43)(B) as an "aggravated felony". This increases the maximum punishment for unauthorized reentry. After the district court denied his motion to dismiss the indictment, Manriquez-Alvarado pleaded guilty and was sentenced to 39 months' imprisonment. The plea reserved the right to contest on appeal the denial of the motion to dismiss.

All of the convictions for reentry rest on the 2008 removal order. Manriquez-Alvarado contends that this order is invalid because immigration officials never had "jurisdiction" to remove him. That's because a document captioned "Notice to Appear" that was served on him in February 2008 did not include a date for a hearing. *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), holds that a document missing this information does not satisfy the statutory requirements, 8 U.S.C. §1229(a)(1), for a Notice to Appear. We held in *Ortiz-Santiago v. Barr*, 924 F.3d 956 (7th Cir. 2019), that *Pereira* identifies a claims-processing doctrine rather than a rule limiting the jurisdiction of immigration officials. Manriquez-Alvarado wants us to overrule *Ortiz-Santiago*, but that's not in the cards. No other circuit has disagreed with its holding, and its reasoning is powerful.

That's not all. Manriquez-Alvarado supposes that, if *Pereira* establishes a jurisdictional rule, then any earlier removal decision is void. Established law is otherwise. Lawyers have it drilled into them that jurisdictional deficiencies may be raised at any time. What this means, however, is any time

during the litigation to which the problem applies. Suppose a suit is filed in which the plaintiff alleges the parties' "residence" rather than their "citizenship." That is a jurisdictional defect. E.g., *Gilbert v. David*, 235 U.S. 561 (1915); *Steigleder v. McQuesten*, 198 U.S. 141 (1905); *Denny v. Pironi*, 141 U.S. 121 (1891); *Robertson v. Cease*, 97 U.S. 646 (1878). But if the problem escapes notice, and the case goes to judgment on the merits, the result is conclusive; the decision cannot be collaterally attacked on the ground that the jurisdictional allegations were defective. See, e.g., *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 152–53 (2009). This principle is equally applicable to administrative decisions—after all, agencies operate outside Article III, which is the source of judges' punctiliousness about their own jurisdiction—which means that the 2008 removal order could not be set aside even if we were to overrule *Ortiz-Santiago*.

Older removal orders are potentially open to collateral attack, but not because a defect in a long-closed proceeding could be called "jurisdictional." To mount a belated challenge the alien must show:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

> (3) the entry of the order was fundamentally unfair.

8 U.S.C. §1326(d). This statute requires the alien to show all three; one or two won't suffice. See *United States v. Hernandez-Perdomo*, 948 F.3d 807, 810–11 (7th Cir. 2020); *United States v. Watkins*, 880 F.3d 1221, 1224 (11th Cir. 2018); *United States v. Estrada*, 876 F.3d 885, 887 (6th Cir. 2017); *United*

*States v. Lopez-Collazo*, 824 F.3d 453, 458 (4th Cir. 2016); *United States v. Soto-Mateo*, 799 F.3d 117, 120 (1st Cir. 2015); *United States v. Cordova-Soto*, 804 F.3d 714, 719 (5th Cir. 2015); *United States v. Lopez-Chavez*, 757 F.3d 1033, 1044 (9th Cir. 2014); *United States v. Torres*, 383 F.3d 92, 99 (3d Cir. 2004); *United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002).

The removal proceedings in 2008 charged Manriquez-Alvarado with being in the United States without authorization, having committed a crime of moral turpitude that cut off avenues for discretionary relief. He could have contested those charges, taking his arguments to the Board of Immigration Appeals (§1326(d)(1)) and the court of appeals (§1326(d)(2)). Likewise he could have argued that the Notice to Appear did not satisfy the statute, pursuing both administrative and judicial relief. He did none of those things. Instead he stipulated to his removal and waived his rights to a hearing, to administrative review, and to judicial review. The agency did not issue a new notice with a hearing date, because Manriquez-Alvarado did not want a hearing. After signing this waiver he was removed.

Now he tells us that it would have been futile to pursue administrative and judicial remedies in 2008. In a sense this is irrefutable: once he waived his procedural rights and agreed to be removed, *of course* it would have been futile to continue resisting. But the remedies were nonetheless "available" to Manriquez-Alvarado, had he decided to stand on his rights. That Manriquez-Alvarado waived those rights makes the 2008 order less amenable to collateral attack and not more, as he supposes.

Manriquez-Alvarado asserts that seeking review would have been futile in a second sense: *Pereira* was not decided until 2018, so he could not have relied on it in 2008. Once again this is irrefutable, but *Pereira* interpreted a statute that long predates 2008. Manriquez-Alvarado was free to rely on that statute. If the agency and court ruled against him, the relevant decision by the Supreme Court might have carried his name rather than Pereira's. Most likely, however, if he had complained that the Notice omitted a hearing date, the agency would have issued another with the blank filled in. That would have made an appeal "futile" in the sense that it would have done nothing but postpone the inevitable (Manriquez-Alvarado does not contend that he had any substantive defense to removal), but it would have protected all of his procedural entitlements.

The statute does not ask whether administrative and judicial remedies would have been futile. It asks whether they were *available*. The best way to determine whether a remedy works is to use it and see what happens, rather than to bypass it and speculate years later about what might have happened. One might say that a remedy is not "available" if it is sure to be utterly useless, but as we've explained Manriquez-Alvarado could have used his remedies to seek a Notice to Appear with a hearing date, and if one were not forthcoming to present his arguments to the Board, to this court, and to the Supreme Court. That opportunity is all the statute requires to make a remedy "available"; the condition is satisfied whether or not the alien would have prevailed. See *Bousley v. United States*, 523 U.S. 614, 622–23 (1998) (adverse precedent in the local court of appeals does not excuse failure to present an argument unless the claim was so novel that counsel could not have imagined it). Cf. *Porter v. Nussle*,

534 U.S. 516 (2002) (an administrative remedy is "available" for the purpose of a different exhaustion rule if it offers the prospect of any relief, even if not the remedy the applicant wants).

Much the same may be said about Manriquez-Alvarado's contention that the removal order was "fundamentally unfair". He asserts that because he waived his rights without knowing about *Pereira*, which lay a decade in the future, the waiver was necessarily involuntary. To repeat: *Pereira* is a statutory decision, and Manriquez-Alvarado could have consulted the statute and invoked its benefit, small as that was. (Recall that the only effect of securing a complete Notice to Appear would have been a slight delay in removal.) We held in *Ortiz-Santiago*, 924 F.3d at 964–65, that the statute creates a procedural right that is lost if not asserted or the failure excused, and we applied that rule to an alien whose removal order predated *Pereira*. If that did not produce a fundamentally unfair outcome for Ortiz-Santiago, it does not produce one for Manriquez-Alvarado either. His removal was the result of his criminal conduct, coupled with the fact that he lacked permission to enter the United States at all. He has never asserted a legitimate claim of entitlement to be in the United States. It is not unfair, fundamentally or otherwise, to order such an alien to depart.

AFFIRMED