In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 20-1720

VICTOR MEJIA-PADILLA,

*Petitioner*,

*v.*

MERRICK B. GARLAND,
Attorney General of the United States,

*Respondent*.

---

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A200-558-095

---

ARGUED DECEMBER 2, 2020 — DECIDED JUNE 29, 2021

---

Before EASTERBROOK, RIPPLE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Petitioner Victor Mejia-Padilla ("Mejia") seeks review of an order of the Board of Immigration Appeals sustaining the denial of his statutory motion to reopen his deportation proceeding, which he filed more than six years after that proceeding closed. Mejia sought reopening on the ground that the notice to appear that initiated his deportation proceeding was defective under *Pereira v. Sessions*,

138 S. Ct. 2105 (2018), with the result that he continued to accrue time in the United States toward the 10-year threshold for seeking cancellation of removal and is now eligible to seek such relief. Because Mejia forfeited any objection to the deficiency in the notice to appear by not timely raising it in the removal proceeding and has not shown cause for forfeiture nor prejudice resulting from the defect in the notice, we deny the petition for review.

## I.

Mejia, a native and citizen of Mexico, entered the U.S. without inspection in 2005 and has lived here continuously since that time. He is married to a Mexican national who like him has no legal status in the U.S.; together, they have two children who were born here and are thus U.S. citizens. In 2011, he was placed in removal proceedings. The initial notice to appear that was served on Mejia did not include the date and time of the initial immigration hearing and thus did not comply with the governing statute, 8 U.S.C. § 1229(a)(1)(G)(i); *Pereira*, 138 S. Ct. 2105. As was typical prior to the *Pereira* decision,[1] a follow-up notice of hearing filled in that gap and Mejia appeared *pro se* for his initial hearing and all subsequent hearings. In March 2012, an immigration judge sustained the charge of his inadmissibility, granted Mejia voluntary departure to Mexico—the only relief for which he was eligible at that time—gave him until July 19, 2012, to depart the United

---

[1] In *Pereira*, the Court noted that "the Department of Homeland Security (DHS), at least in recent years, almost always serves noncitizens with notices that fail to specify the time, place, or date of initial removal hearings whenever the agency deems it impracticable to include such information." 138 S. Ct. at 2811.

States, and alternatively ordered him removed in the event he did not depart the country voluntarily by that date. Both parties waived any appeal. As it turned out, Mejia did not depart the U.S. and, although he became removable as of July 19, 2012, ICE's Chicago Enforcement and Removal Office instead placed him under an order of supervision. Mejia has complied with the terms of that order and has remained in the U.S. since that time.

In June 2018, the Supreme Court held in *Pereira* that a notice to appear which fails to specify the time and place at which a removal proceeding will take place, as expressly required by the governing statute, 8 U.S.C. § 1229(a)(1)(G)(i), is insufficient to trigger the "stop-time" rule ending a non-citizen's period of continuous presence in the United States, 8 U.S.C. § 1229b(d)(1)(A). The length of time a non-citizen has been continuously present in this country has a direct bearing on his ability to seek relief from deportation. In particular, an undocumented person like Mejia must have accrued 10 years of continuous presence in this country in order to become eligible for cancellation of removal, a form of discretionary relief available to a non-permanent resident who is of good moral character, does not have a specified criminal history, and can show that his removal from the U.S. would impose an "exceptional and extremely unusual hardship" to a spouse, parent, or child who is either a U.S. citizen or lawful permanent resident. § 1229b(b)(1).

Within 30 days after the Supreme Court decided *Pereira*, Mejia filed with the immigration court what he styled as a motion to reconsider, see 8 U.S.C. §1229a(c)(6), but which also sought to reopen the removal proceeding, see 8 U.S.C. § 1229a(c)(7). The reconsideration portion of the motion

asserted that in view of the defect in the notice to appear is‐ sued to Mejia, jurisdiction had never vested in the immigra‐ tion court. Mejia therefore asked the court to reconsider its re‐ moval order and terminate the removal proceeding. With re‐ spect to reopening, Mejia noted that because the defective no‐ tice to appear did not trigger the stop-time rule, he had now accrued the ten years of continuous presence in the United States necessary to seek cancellation of removal. He asked the court to reopen the removal proceeding for that purpose, and he submitted evidence with his motion supporting his re‐ quest.[2] Anticipating that the court might deem his dual re‐ quests for reconsideration and reopening untimely, as they were filed years after his removal was ordered, he argued that the time limits on such motions (30 days for motions to recon‐ sider and 90 days for motions to reopen) should be equitably tolled in light of the sea change that *Pereira* had effected in the case law as to notices to appear. In the alternative, Mejia asked the court to exercise its authority to, at any time, *sua sponte* reconsider or reopen the removal proceeding. *See* 8 C.F.R. § 1003.23(b)(1); *Matter of J–J–*, 21 I. & N. Dec. 976, 984 (B.I.A. 1997).

Shortly after Mejia filed his motion, the Board of Immigra‐ tion Appeals held in *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441, 447 (B.I.A. 2018), that the required components of a notice to appear need not be set forth in a single document, and so long as a second notice fills in the details as to the time and place of a removal proceeding that were missing from the

---

[2] "Unlike motions to reconsider, motions to reopen ask the Board to reconsider its earlier decision based on facts or evidence not available at the time of the original decision." *Hernandez-Alvarez v. Barr*, 982 F.3d 1088, 1096 (7th Cir. 2020) (cleaned up).

initial notice to appear (as was true in Mejia's case), the two documents may, taken together, satisfy the statute (and thus legitimately convene a removal proceeding).

The immigration judge denied Mejia's motion to reconsider and reopen on the basis of *Bermudez-Cota*. In a one-line order, the judge noted that Mejia had not addressed the BIA's decision in that case.

Mejia then filed a second motion to reconsider, this time addressing the Board's decision in *Bermudez-Cota* and asking the immigration judge to rethink her adverse ruling on his underlying motion to reconsider or reopen the removal proceeding.

The immigration judge denied Mejia's request, indicating that he had not meaningfully distinguished *Bermudez-Cota*. Mejia appealed the denial of his motion to reconsider or reopen the removal proceeding to the BIA.

The Board dismissed Mejia's appeal. The Board in the first instance noted that Mejia's (second) motion to reconsider was barred both in time (it was filed more than 30 days after he was ordered removed) and number (the statute allows only one motion to reconsider, but Mejia had filed two, the second of which addressed the immigration judge's reliance on *Bermudez-Cota*). As to the merits of the motion, the Board, citing a line of this court's post-*Pereira* cases beginning with *Ortiz-Santiago v. Barr*, 924 F.3d 956, 963–64 (7th Cir. 2019), noted that the statutory requirement that a notice to appear include the date, time, place of a removal hearing is not a jurisdictional requirement but rather a claim-processing rule that must be raised in a timely manner in order to warrant dismissal of the proceeding. "[Mejia] does not claim that he made a timely

objection in this case nor has he shown any prejudice from the absent information in the NTA, which was cured in a timely manner." A.R. 4. The Board also pointed out that Mejia had not yet acquired 10 years of continuous presence in the United States when the immigration judge closed the removal proceeding in 2012. Finally, the Board was not persuaded that *sua sponte* reopening of Mejia's case was warranted. "The accrual of additional equities while the respondent remained in the United States following the expiration of his voluntary departure period [which presumably included the fact that Mejia had now met the 10-year eligibility threshold for cancellation of removal] does not constitute an exceptional circumstance which would merit sua sponte reopening." A.R. 4.

## II.

Mejia's petition for review of the Board's decision is focused on his request to reopen the removal proceeding so that he could pursue cancellation of removal. Mejia does not challenge the Board's rejection of his request for reconsideration, which was premised on the notion that the omissions in the notice to appear deprived the immigration court of jurisdiction over the removal proceeding. As the Board correctly recognized, and as our discussion below elucidates, our post-*Pereira* cases foreclose that line of argument. So Mejia is left to argue that the immigration judge, and in turn the Board, erred in deciding that he is not entitled to reopening of the proceeding in order to pursue cancellation of removal, now that he has met the eligibility threshold for seeking such relief. In this respect, Mejia does not challenge the Board's decision insofar as it concerned *sua sponte* reopening, a decision that was rendered on the merits of Mejia's request and is beyond our purview to review. *See Fuller v. Whitaker*, 914 F.3d 514, 519 (7th

Cir. 2019). Rather, he challenges the Board's rejection of his statutory motion to reopen, which the Board did not explicitly address but which the immigration judge rejected on the strength of the Board's decision in *Bermudez-Cota*.

As an initial matter, we may take it as a given that Mejia is now eligible to seek cancellation of removal. He has lived in this country without interruption since he entered without inspection in 2005. Had the notice to appear issued in 2011 contained the date and time of the initial hearing along with all of the other statutorily required information, that notice would have triggered the stop-time rule and left Mejia short of the 10 years' presence necessary for him to seek cancellation of removal. But the notice did not include the date and time of the hearing, and *Pereira* makes plain that it was therefore insufficient to stop the clock on Mejia's cognizable presence in the United States. The Board's decision in *Bermudez-Cota* posited that a follow-up notice including date and time information can nonetheless cure the problem and trigger the stop-time rule, but the Supreme Court's more recent decision in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), scotches that notion.[3]

Nonetheless, Mejia faces two insurmountable obstacles to reopening: the untimeliness of his motion to reopen, and his forfeiture of the defect in the notice to appear. Mejia was required to file any statutory motion to reopen within 90 days after he was ordered removed. 8 U.S.C. § 1229a(c)(7)(C)(i);

---

[3] This circuit never endorsed the Board's rationale in *Bermudez-Cota*. *See Ortiz-Santiago*, 924 F.3d at 962 ("It appears to us that *Bermudez-Cota* brushed too quickly over the Supreme Court's rationale in *Pereira* and tracked the dissenting opinion rather than the majority.").

8 C.F.R. § 1003.23(b)(1). His motion invoking the Supreme Court's 2018 decision in *Pereira* was filed six years after that deadline. Mejia argues here as he did before the immigration judge and the Board that the 90-day time deadline should be equitably tolled. He reasons that *Pereira* worked a fundamental change in the jurisprudence concerning incomplete notices to appear: Prior to *Pereira*, this circuit, like most others, had held that omissions in a notice to appear could be cured by a follow-up notice of hearing so that the clock stopped on an alien's continuous presence in the United States and his eligibility for cancellation of removal. *See Dababneh v. Gonzales*, 471 F.3d 806, 809–10 (7th Cir. 2006). *Pereira* cleared away that entrenched line of precedent and, in Mejia's view, opened the door for the first time to the argument he now pursues in favor of reopening. But our post-*Pereira* cases make clear to the contrary that such a defect in the notice to appear was always evident as a matter of what the statute's plain language required, and consequently nothing prevented Mejia from raising that defect in 2012. In the language of these cases, Mejia forfeited his objection to the faulty notice by not timely raising it in the removal proceeding, and he is precluded from relying on the defective notice now in order to pursue cancellation of removal in a reopened removal proceeding unless he can demonstrate cause and prejudice. These cases also make plain why Mejia cannot rely on equitable tolling to excuse the lateness of his motion to reopen.

In *Ortiz-Santiago v. Barr*, *supra*, 924 F.3d 956, for example, the petitioner argued that because the notice to appear originally sent to him lacked the requisite time and date information, subject matter jurisdiction never vested in the immigration court and he was never properly placed in removal proceedings. This court concluded that the statutory

requirement that a notice to appear include the hearing's date, time, and place is not a jurisdictional requirement—such that it can be raised at any time—but rather is a claim-processing rule that, although it may support dismissal of a proceeding, can be forfeited if not raised in a timely manner. *Id.* at 963–64. The court recognized that until *Pereira*, an objection based on missing information in the original notice would have been deemed meritless based on *Dababneh* (and similar holdings in most other circuits). *Id.* at 964. But by the time of Ortiz-Santiago's removal hearing in 2016, the Third Circuit had parted ways with this circuit. Thus, nothing prevented Ortiz-Santiago from invoking the clear text of the statute and the Third Circuit's decision in contesting the validity of his notice to appear. *Id.* Consequently, he had forfeited any objection based on any defect in the notice. *Id.* Moreover, there was no evidence he was prejudiced in terms of his ability to appear and respond to the notice and contest his removal. *Id.* at 964–65. Had he sought dismissal of the removal proceeding in a timely manner based on the defect in the notice to appear, a new notice correcting the defect could have been issued and the case would have proceeded in the normal course. *Id.*

Similarly, in *United States v. Manriquez-Alvarado*, 953 F.3d 511 (7th Cir. 2020), the defendant in a 2018 illegal re-entry prosecution sought to collaterally attack the removal order that formed the predicate for his prosecution on the ground that the original notice to appear in his 2008 removal proceeding did not include a date for his first hearing, rendering the entire proceeding and the order of removal invalid. The ability to attack the removal order collaterally depended in part on him showing that there was no available remedy in 2008 for the defect in the notice to appear. *Id.* at 513. Manriqez-Alvarado argued that it would have been "futile" for him to

challenge the notice in 2008 (whether before the immigration judge or on appeal to the Board), given that the *Pereira* decision was 10 years off and existing circuit precedent was squarely against him. But we explained that what mattered was whether an objection was *available* to him in 2008, not whether such an objection would have been futile. *Id.* at 513–14. And an objection to the sufficiency of the notice to appear indeed was available to Manriquez-Alvarado: "*Pereira* interpreted a statute that long predates 2008. Manriquez-Alvarado was free to rely on that statute." *Id.* at 513. Had he made such an argument, his case, rather than Pereira's, might have been the one that the Supreme Court took to set the favorable precedent. *Id.* More likely, the agency might simply have corrected the problem by issuing a new notice with the requisite information. *Id.* So in no sense was relief "unavailable" to Manriquez-Alvarado in 2008, such that he could be excused for not seeking relief for the defective notice in a timely manner and permitted to instead pursue such relief collaterally. *Id.* at 513–14.

Finally, in circumstances closer to those presented here, this court concluded that *Pereira* did not permit an alien to reopen her removal proceeding in order to belatedly seek cancellation of removal. *Chen v. Barr*, 960 F.3d 448 (7th Cir. 2020). Chen was placed in removal proceedings by way of a defective notice to appear in 2010. She did not challenge the defect in the notice, nor did she seek cancellation of removal, although as a factual matter she had been present in the U.S. for 10 continuous years by the time her protracted removal proceeding came to a close: her removal order became final in 2017, before *Pereira* was decided. After *Pereira* was decided the following year, Chen sought to reopen the proceeding, arguing that the defect in the notice to appear, as laid bare by

*Pereira*, had allowed the clock on her presence in the U.S. to keep running, such that she was now able to seek cancellation of removal. In weighing Chen's request, we asked "whether Chen made a timely objection [to the defective notice] or can show excusable delay and prejudice." *Id.* at 451. "The answer to all three is 'no.'" *Id.* We noted that notwithstanding adverse circuit precedent in 2010 as to the validity of the notice to appear, Chen nonetheless could have challenged the notice based on the language of the statute. "[A]dverse precedent in a local court of appeals does not excuse omitting a legal argument, unless it is one a knowledgeable lawyer could not have imagined." *Id.* (citing *Bousley v. U.S.*, 523 U.S. 614, 622-23, 118 S. Ct. 1604, 1611 (1998)). Chen therefore lacked cause for her failure to make a timely challenge to the defective notice. *Id.* Chen could not show prejudice either. She appeared for the original hearing (and thus could not show that she lacked knowledge as to the time and place of the hearing); moreover, had she objected to the adequacy of the notice at the time, "the agency could have cured the problem on the spot, and the hearing would have continued." *Id.* at 451. "Chen has never argued that she was prejudiced by the delivery of the statutory information in two documents rather than one. (A cure in December 2011 [when the first hearing took place] would have stopped time before Chen reached 10 years' presence.)" *Id.* We went on to point out that if anything, it was the agency that would be prejudiced by allowing Chen to seek relief at this juncture, when the notice defect she was relying upon was one that the agency could have fixed had it been raised *before* Chen acquired the 10 years of continuous residence that would render her eligible for cancellation of removal. *Id.* at 452.

These cases make clear that a flaw in the original notice to appear is one that can be forfeited, and Mejia *did* forfeit it by not making a timely objection to the notice at the outset of the removal proceeding. Although *Pereira* obviously had not yet been decided and existing circuit precedent was against Mejia in 2011 and 2012, the plain language of the statute was in his favor and on that basis he could have challenged the sufficiency of the notice to appear by asking the judge to dismiss the proceeding. He did not, and he has not shown cause that would excuse this failure. Nor has Mejia shown that he was prejudiced by the defect in the notice. As we noted in *Hernandez-Alvarez v. Barr*, "*Ortiz-Santiago*'s prejudice inquiry does not focus on prejudice derived from the removal proceedings generally; rather, it focuses specifically on prejudice suffered at the time of the hearing." 982 F.2d 1088, 1096 (7th Cir. 2020). "Otherwise," as we added in *Meraz-Saucedo v. Rosen*, "any petitioner could avoid forfeiture by arguing that he was prejudiced by the loss of a substantive argument." 986 F.3d 676, 684 (7th Cir. 2021). Here, Mejia was apprised of the date and time of the hearing in a subsequent notice of hearing and he appeared for the initial hearing as well as subsequent court dates. *See id.* (collecting cases finding lack of prejudice in similar circumstances). And had Mejia raised the defect at the time, the government could have corrected the problem, stopped the clock on Mejia's continuous presence in this country, and eliminated any doubt about whether Mejia is now eligible to seek cancellation of removal. In short, Mejia forfeited the objection and has demonstrated neither an excuse for the forfeiture nor prejudice from the underlying error.

Mejia argues that the claim-processing rationale of *Ortiz-Santiago* and follow-on cases ought not to apply to the stop-

time rule, which rule has a direct bearing on his ability to seek cancellation of removal—cancellation being a substantive rather than a procedural right. We squarely rejected this argument in *Meraz-Saucedo*, 986 F.3d at 684 ("This argument is simply an attempt to dodge the claims-processing rationale articulated in *Ortiz-Santiago* and rehash [the petitioner's] prejudice arguments.").

Mejia has also attempted to distinguish *Chen* on the ground that unlike Chen, who reached the 10-year eligibility threshold for cancellation of removal while her removal proceeding was still pending, his own removal proceeding began and ended long before he reached the 10-year mark. This is a distinction without a difference. Chen may have had more of an incentive to pursue any argument that might have opened the door to cancellation of removal once she reached the 10-year mark, but the point of the court's holding is that she never timely challenged the defect in the notice to appear, period. *See* 960 F.3d at 451, 452 (noting that Chen could have raised the defect in the notice to appear in the years before she attained eligibility for cancellation of removal). That is just as true with respect to Mejia was it was with Chen. Mejia had every reason in 2011 and 2012 to challenge the validity of the removal proceeding commenced by the faulty notice to appear. For that matter, although he was not yet eligible to seek cancellation of removal, he had a comparable incentive to keep the clock running on his continuous presence in the United States so that he might *become* eligible. And just as in *Chen*, had Mejia made a timely challenge to the notice, the government could have immediately corrected the problem and removed all doubt as to whether the clock on Mejia's presence in the U.S. stopped running.

Mejia also emphasizes that there is distinction between the forfeiture of an objection and the equitable tolling of a time limitation, and he urges us not to read *Chen* so as to foreclose the case for equitable tolling that he makes in order to justify the timing of his motion to reopen. We take his point that these are distinct legal constructs. But in relevant part, both ask whether a petitioner has slept on his rights. As Mejia himself acknowledges, a successful argument for equitable tolling would require him to show that he has been diligent in the pursuit of his rights but that an extraordinary circumstance blocked his path. Mejia Br. 15 (citing *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 2562 (2010)). The rationale of our post-*Pereira* cases makes clear why Mejia was not diligent and also why the timing of the *Pereira* decision vis-à-vis prior adverse circuit precedent does not amount to an extraordinary circumstance that prevented him from making a timely challenge to the deficient notice to appear. The statutory argument as to the deficiency was available to Mejia in 2011 and 2012, while his removal proceeding was pending, as it was to every other alien served with such a defective notice in the years leading up to *Pereira*, but he did not raise it. *See Herrera-Garcia v. Barr*, 918 F.3d 558, 563 (7th Cir. 2019); *see also Chen*, 960 F.3d at 451.[4]

---

[4] Given Mejia's want of diligence in this respect, we have no occasion to consider, as a countervailing equitable circumstance, the government's decision to allow him to remain in the U.S. for years despite being subject to a removal order. The government might have a hard time arguing that *it* would be prejudiced if Mejia were permitted to pursue cancellation of removal now, given that it chose to let Mejia remain in the U.S. under supervision. *See Matter of Peña-Diaz*, 20 I. & N. Dec. 841, 846 (BIA 1994). But that argument does not excuse Mejia's own lack of diligence in challenging the sufficiency of the notice to appear.

**III.**

An objection to the defect in the notice to appear served on Mejia was one that was available to him from the outset of his removal proceeding based on the plain language of the statute. He forfeited the objection by not bringing it to the attention of the immigration judge at that time. He has not shown cause for the forfeiture, nor has he shown that he was prejudiced by the defect in the notice. He is thus foreclosed from relying on that defect now to ask the Board to reopen the removal proceeding years after the proceeding closed in order to seek cancellation of removal, for which he has since become eligible. We reject Mejia's argument for equitable tolling of the deadlines for pursing reopening of his removal proceeding on the same basis. Mejia's petition for review of the Board of Immigration's order sustaining the denial of his motion to reopen is DENIED.