In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 25-1233

FLAVIA COATL-CHIQUITO,

*Petitioner*,

*v.*

TODD W. BLANCHE, Acting Attorney General of the United States,

*Respondent*.

———————————

Petition for Review of an Order of the
Board of Immigration Appeals
No. A096-210-400

———————————

SUBMITTED DECEMBER 10, 2025 — DECIDED APRIL 30, 2026

———————————

Before BRENNAN, *Chief Judge*, and LEE and KOLAR, *Circuit Judges*.

KOLAR, *Circuit Judge*. Petitioner Flavia Coatl-Chiquito came to the United States in 2004, without documentation. After failing to appear for her removal proceeding in December 2004, she was declared removable *in absentia*. In 2021, Coatl-Chiquito sought to reopen her case, claiming that the Supreme Court's decision in *Niz-Chavez v. Garland* tolled the

statutory deadline to reopen and provided a new ground for cancellation of removal based on defects in her initial notice-to-appear. She subsequently filed a second motion to reopen, asserting for the first time that she never received proper notice of the December 2004 hearing.

The Immigration Judge and Board of Immigration Appeals (the "Board") declined to reopen the case, holding that *Niz-Chavez* did not equitably toll the 90-day deadline for moving to reopen a final order of removal,[1] and holding that her second motion was numerically barred. They further declined to reopen the case *sua sponte*.

Coatl-Chiquito petitions us to reverse the Board's conclusion, claiming error in the Board's refusal to (1) apply equitable tolling under *Niz-Chavez*, (2) excuse the numerical bar, and (3) reopen her proceedings *sua sponte*. Because the Board's holdings as to equitable tolling and the numerical bar on motions to reopen are consistent with our precedents, we deny the petition as to those claims. And because Coatl-Chiquito cites no legal error in the Board's refusal to reopen *sua sponte* that is within our jurisdiction to review, we dismiss that claim for lack of jurisdiction.

---

[1] The immigration judge observed that *in absentia* orders are actually subject to a 180-day deadline to reopen under 8 U.S.C. § 1229a(b)(5)(C), rather than the 90-day deadline that applies generally for motions to reopen (not *in absentia*) under 8 U.S.C. § 1229a(c)(7)(C)(i). But Coatl-Chiquito argued before the immigration judge and the Board that the 90-day deadline under § 1229a(c)(7)(C)(i) applied, and those adjudicatory bodies reasonably adopted her framework. For the purposes of this opinion, we apply the correct, 180-day deadline to reopen *in absentia* orders under 8 U.S.C. § 1229a(b)(5)(C) to Coatl-Chiquito's claims. The precise deadline, however, does not alter the outcome of this appeal.

## I. Background

Coatl-Chiquito entered the country, without inspection, on September 26, 2004. A few days later, a vehicle transporting her and fifteen other migrants was struck by a semi-truck while stopped at a highway intersection. Two of the passengers were killed in the accident, and the survivors, including Coatl-Chiquito, were taken to a local jail. After brief questioning from local law enforcement about the accident, she was then transferred to a larger detention facility and questioned by officers from the Department of Homeland Security. The officers took her information, including an Indiana mailing address, and confirmed that she had neither been processed upon entry to the country nor claimed a lawful basis to remain. On October 4—presumably while she was still in detention—DHS personally served Coatl-Chiquito with a notice-to-appear in Chicago Immigration Court, at a date and time "to be set" later.

The Immigration Court mailed a formal notice-of-hearing dated November 3, 2004 to the Indiana mailing address, setting her initial hearing for December 29. Coatl-Chiquito, however, claims to never have resided at the Indiana address collected by DHS, having taken residence in Columbus, Ohio immediately after the traumatic car crash. As a result, she did not appear at the hearing, and the Immigration Judge declared her removable *in absentia*.

For sixteen years, Coatl-Chiquito's case laid dormant; no efforts were taken to enforce the removal order, nor did she attempt to reopen her case. But a duo of Supreme Court decisions—*Pereira v. Sessions*, 585 U.S. 198 (2018), and *Niz-Chavez v. Garland*, 593 U.S. 155 (2021)—prompted Coatl-Chiquito to seek cancellation of removal on new grounds.

First, in *Pereira*, the Court held that an initial notice-to-appear missing the date and time of the removal hearing does not trigger the "stop-time rule" for determining an alien's continuous presence in the United States. 585 U.S. at 201–02. This decision rendered Coatl-Chiquito's notice-to-appear—which did not include the date or time of her initial hearing—defective. Then, in *Niz-Chavez*, the Supreme Court clarified that a later notice providing the time and date of a removal hearing does not cure a defective notice-to-appear for the purpose of the stop-time rule. 593 U.S. at 160–61. For Coatl-Chiquito, this meant that her notice-of-hearing, providing the date and time of her initial hearing, did not cure the defect in her initial notice-to-appear.

Shortly after the Supreme Court handed down *Niz-Chavez*, Coatl-Chiquito filed a motion in the Chicago Immigration Court requesting that her removal proceedings be reopened. She acknowledged that the deadline for reopening a final order of removal had long passed but requested that the court consider the deadline equitably tolled by *Niz-Chavez* or, alternatively, reopen the case *sua sponte*. If the deadline were tolled, Coatl-Chiquito explained, she was now eligible for cancellation of removal given her continuous presence in the United States exceeding ten years, uninterrupted by the defective notice-to-appear.

The immigration judge denied her motion, holding that *Niz-Chavez* did not toll the statutory deadline to reopen and refusing to reopen *sua sponte*. Coatl-Chiquito appealed the denial to the Board of Immigration Appeals and, while the appeal was pending, filed a second motion to reopen directly with the Board. She argued in her second motion, for the first time, that she was never provided adequate notice of her

hearing under 8 U.S.C. § 1229a(b)(5)(C)(ii)—a challenge that would excuse the statutory deadline to reopen. *See* 8 C.F.R. §§ 1003.2(c)(2), 1003.23(b)(4)(ii). She based her lack-of-notice claim on the fact that the DHS officers that interviewed her and served her with the notice-to-appear did not speak Spanish, that she did not understand the papers she was signing, and that she never resided at the Indiana address collected by DHS.

The Board affirmed the Immigration Judge's order. It concluded that *Niz-Chavez* did not toll the deadline to reopen her case because the asserted defect—the absence of information in the notice-to-appear—was ascertainable when Coatl-Chiquito was personally served with the notice in 2004, even if the Supreme Court had yet to recognize that absence as a defect. Nor had Coatl-Chiquito explained how she had diligently pursued her claim in the intervening years. It further held that Coatl-Chiquito's second motion to reopen based on lack of notice was "numerically barred"—that is, barred by 8 U.S.C. § 1229a(c)(7)(A)'s allowance for only "one motion to reopen proceedings." And alternatively, on the merits, the Board held that Coatl-Chiquito had not established lack of adequate notice. It observed there was no requirement that her notice-to-appear be written or explained to her in Spanish, and reasoned that "having failed to provide a valid address to the Immigration Court for purposes of receiving notice, [Coatl-Chiquito] was not entitled to actual notice of her removal hearing." Finally, the Board concluded that "[Coatl-Chiquito's] claims, cumulatively considered, also do not persuade this Board that sua sponte reopening is warranted." Coatl-Chiquito now appeals the Board's holdings.

**II. Discussion**

On appeal, Coatl-Chiquito argues that: (1) the Immigration Judge and the Board abused their discretion by refusing to equitably toll her deadline to reopen based on *Niz-Chavez*; (2) the Board abused its discretion in determining that her second motion to reopen was numerically barred; and (3) the Board erred by refusing to reopen her case *sua sponte*.

Putting aside the *sua sponte* denial—which we turn to in due course—we review the Board's decision to deny a motion to reopen removal proceedings for abuse of discretion. *Cruz-Velasco v. Garland*, 58 F.4th 900, 903 (7th Cir. 2023).

**A.  Equitable Tolling**

It is undisputed that Coatl-Chiquito's first motion to reopen was untimely. But we have held that the time and numerical limits under 8 U.S.C. § 1229a are "non-jurisdictional claim-processing rules, subject to the doctrine of equitable tolling." *Ramos-Braga v. Sessions*, 900 F.3d 871, 876 (7th Cir. 2018). Equitable tolling requires Coatl-Chiquito "to show that [she] has been diligent in the pursuit of [her] rights but that an extraordinary circumstance blocked [her] path." *Mejia-Padilla v. Garland*, 2 F.4th 1026, 1034 (7th Cir. 2021).

Coatl-Chiquito argues that because the Supreme Court's decision in *Niz-Chavez* was an "extraordinary circumstance," and she diligently moved to reopen shortly after it was decided, equitable tolling applies. We have yet to consider whether the Supreme Court's decision in *Niz-Chavez* tolled the statutory deadline to reopen for individuals who, like Coatl-Chiquito, are found removable *in absentia* after a defective notice-to-appear. But our post-*Pereira* case law, rejecting

near-identical equitable tolling arguments, forecloses Coatl-Chiquito's argument.

After *Pereira*, we fielded many appeals from individuals who, understandably, sought to equitably toll the deadline to reopen and challenge their newly defective notices-to-appear. *See, e.g.*, *Mejia-Padilla*, 2 F.4th at 1027–28; *Chen v. Barr*, 960 F.3d 448, 449 (7th Cir. 2020); *Herrera-Garcia v. Barr*, 918 F.3d 558, 563 (7th Cir. 2019). But we held, across the board, that *Pereira* did not toll the petitioners' obligation to challenge an asserted defect that was identifiable at the time of the initial hearing. *Mejia-Padilla*, 2 F.4th at 1031–34 ("[P]rior adverse circuit precedent does not amount to an extraordinary circumstance that prevented [the petitioner] from making a timely challenge to the deficient notice to appear."); *Chen*, 960 F.3d at 450–51 ("A problem in the charging document could and should have been pointed out promptly, so that any error could be fixed."); *Herrera-Garcia*, 918 F.3d at 563 ("Herrera-Garcia ignores the fact that he could have raised the issue under consideration in *Pereira* with the IJ or the Board earlier or at least requested a stay until the case was decided.").

Under similar reasoning, we have also held that petitioners *forfeited* any argument that their notice-to-appear was defective under *Pereira* where they did not raise such objections at their initial hearings. *See Ortiz-Santiago v. Barr*, 924 F.3d 956, 964 (7th Cir. 2019) (recognizing that *Pereira* "represented a genuine change in circumstances" but declining to excuse forfeiture where "there were signs that a meritorious argument could be raised" pre-*Pereira*); *Vyloha v. Barr*, 929 F.3d 812, 817 (7th Cir. 2019) ("Vyloha could have argued that his

Notice was statutorily deficient well before the *Pereira* decision. As such, Vyloha's present challenge is untimely.").

We see no reason to treat *Niz-Chavez* any differently. Far from the significant evolution of *Pereira*, *Niz-Chavez* was "the next chapter in the same story." *Niz-Chavez*, 593 U.S. at 159. Where *Pereira* recognized that a missing time or date is a defect in a notice-to-appear, *Niz-Chavez* merely confirmed that those missing terms may not be supplemented in a subsequent notice for the stop-time rule. *See id*. at 164. *Niz-Chavez* did not change the fact that Coatl-Chiquito could have raised her challenge to her notice-to-appear at the time of her initial hearing, notwithstanding contrary circuit precedent at the time. *See Mejia-Padilla*, 2 F.4th at 1034. By failing to raise such an objection and waiting for other litigants to cause a favorable change in law, Coatl-Chiquito did not "diligent[ly]" pursue her claims. *Id*.

## B. Numerical Bar

The Immigration and Nationality Act, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, provides that "[a]n alien may file one motion to reopen proceedings under this section" if she can identify new facts supported by evidence. *See* 8 U.S.C. § 1229a(c)(7)(A)–(B). This is a numerical "bar" or "limitation": an individual may file only one motion seeking to reopen her case once she has been declared removable. *See Ramos-Braga*, 900 F.3d at 876. Coatl-Chiquito, the Board reasoned, reached this bar with her first motion to reopen filed before the Immigration Judge, precluding her subsequent motion arguing lack of notice.

Coatl-Chiquito claims this was an abuse of discretion, arguing that under 8 C.F.R. § 1003.23(b)(4)(iii)(A)(2), her claim that she lacked notice of her initial hearing excused both the time and numerical limitations on the motion to reopen. But Coatl-Chiquito misreads the regulations and cannot escape the numerical bar.

Understanding Coatl-Chiquito's argument, and why it does not work, requires untangling the web of regulations governing motions to reopen under 8 U.S.C. § 1229a(c)(7). As noted above, motions to reopen removal proceedings are generally subject to both a 90-day time limitation and a numerical limitation (one motion), which are given effect in the regulations. *See* 8 C.F.R. § 1003.2(c)(2). It is true, however, that the regulations grant certain exceptions to the time and numerical limitations:

> In removal proceedings pursuant to [8 U.S.C. § 1229a], the time limitation set forth in paragraph (c)(2) of this section shall not apply to a motion to reopen filed pursuant to the provisions of § 1003.23(b)(4)(ii). The time and numerical limitations set forth in paragraph (c)(2) of this section shall not apply to a motion to reopen proceedings … [f]iled pursuant to the provisions of § 1003.23(b)(4)(iii)(A)[.]

8 C.F.R. § 1003.2(c)(3).

Tracking down these cross-references, 8 C.F.R. § 1003.23(b)(4)(ii) refers to "Order[s] entered in absentia or in removal proceedings," while 8 C.F.R. § 1003.23(b)(4)(iii)(A) refers to "order[s] entered in absentia in deportation proceedings."

For motions brought under 8 C.F.R. § 1003.23(b)(4)(ii), the 90-day time limitation is excused for *in absentia* removal orders if the movant demonstrates, within 180 days, that her "failure to appear was because of exceptional circumstances" or, at any time, if she demonstrates "lack of notice" or that she was in "Federal or State custody and the failure to appear was through no fault of" her own. 8 C.F.R. § 1003.23(b)(4)(ii).

For motions brought under 8 C.F.R. § 1003.23(b)(4)(iii)(A), the 90-day deadline *and* numerical limit on motions to reopen *in absentia* deportation orders are excused if the movant shows "within 180 days after the date of the order … that the failure to appear was because of exceptional circumstances beyond [her] control" or "[a]t any time" if she demonstrates that she "did not receive notice" or that she "was in federal or state custody and the failure to appear was through no fault" of her own. 8 C.F.R. § 1003.23(b)(4)(iii)(A)(1)–(2).

To be sure, 8 C.F.R. § 1003.23(b)(4)(ii) and (iii)(A) are closely related: both provide for reopening an *in absentia* order based on exceptional circumstances, lack of notice, or failure to appear due to custody. But their impact on time and numerical limitations are different. A motion to reopen an *in absentia* removal order under 8 C.F.R. § 1003.23(b)(4)(ii) is excused from only the 90-day time limitation, while a motion to reopen an *in absentia* deportation order is excused from both the 90-day time limitation *and* the numerical limitation. 8 C.F.R. § 1003.2(c)(3).

Coatl-Chiquito invokes 8 C.F.R. § 1003.23(b)(4)(iii)(A) to evade the numerical bar, but that regulation does not apply to her because she was not placed in deportation proceedings. Rather, her *in absentia* order arose from her removal

proceedings, and her motion to reopen was governed by 8 C.F.R. § 1003.23(b)(4)(ii); this excused the 90-day time limitation, but not the numerical limit. Coatl-Chiquito could have brought her lack-of-notice claim "[a]t any time," but only in her first motion to reopen. *See* 8 C.F.R. § 1003.23(b)(4)(ii). The Board did not abuse its discretion in dismissing her second motion to reopen on this basis.

## C. Refusal to Reopen *Sua Sponte*

Finally, Coatl-Chiquito claims that the Board abused its discretion by refusing to ignore the time and numerical limitations to her motions and reopen her removal proceedings *sua sponte*. Our jurisdiction to review the Board's refusal to reopen a proceeding *sua sponte* is narrow: "the merits of the Board's decision to deny a motion to reopen *sua sponte* are unreviewable," but we have jurisdiction "to recognize and address constitutional transgressions and other legal errors that the Board may have committed in disposing of such a motion." *Fuller v. Whitaker*, 914 F.3d 514, 519 (7th Cir. 2019). Here, Coatl-Chiquito has not identified any error of law that would grant us jurisdiction to review the Board's *sua sponte* denial.

The Board's explanation for refusing to reopen Coatl-Chiquito's case *sua sponte* is, admittedly, brief: "[Coatl-Chiquito's] claims, cumulatively considered, also do not persuade this Board that *sua sponte* reopening is warranted." But we must read this "cumulative" remark in conjunction with the rest of the Board's decision, where it discusses several factors bearing directly on its *sua sponte* authority: (1) that Coatl-Chiquito did not diligently pursue her claims in the intervening years, (2) that she did not give DHS an opportunity to cure the error in the notice-to-appear, and (3) that she

changed addresses without notifying DHS. *See In re J-J-*, 21 I. & N. Dec. 976, 976 (BIA 1997) ("The Board's power to reopen or reconsider cases sua sponte is limited to exceptional circumstances[.]").

While Coatl-Chiquito urges that "exceptional circumstances" were present in her case given "fundamental changes in law" since she was ordered removable *in absentia*, these arguments target the merits of the Board's decision—over which we have no jurisdiction. *Fuller*, 914 F.3d at 519. Coatl-Chiquito identifies no "constitutional transgression[]" or "legal error[]" that would grant us jurisdiction to review the Board's refusal to exercise its *sua sponte* authority. *Id.*

### III. Conclusion

We DENY, and otherwise DISMISS for lack of jurisdiction, the petition for review.